482 A.2d 589

**COMMONWEALTH of Pennsylvania**

v.

**John PASCHALL, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted May 4, 1984.

Filed Sept. 21, 1984.

Charles D. Younger, Assistant Public Defender, Reading, for appellant.

Charles M. Guthrie, Jr., Assistant District Attorney, Reading, for Com., appellee.

Before CIRILLO, DEL SOLE and POPOVICH, JJ.

POPOVICH, Judge:

The appellant, John Paschall, Jr., contends that the evidence was insufficient to support his conviction for burglary and conspiracy. Because we find that the Commonwealth showed nothing more than appellant's mere presence at the crime scene, we must reverse the judgments of sentence and order the appellant discharged.[1]

Viewing the evidence in a light most favorable to the verdict-winner, as well as all reasonable inferences therefrom, *see Commonwealth v. Goodman,* 465 Pa. 367, 350 A.2d 810 (1976), the following is deducible from the record: At approximately 7:15 a.m. on the 28th day of August, 1981, Robert Sutton was looking out of his living room window. As he did so, he "noticed 2 black males coming out of the field at the end of the ... street. They walked up the

1. This dispenses with the need to address appellant's mistrial claim.

street. They got approximately parallel to Mr. Beasley's house [, which was situated across the street from Sutton's residence,] and walked across his lawn and right to the back of his house." (N.T. 55) At this time, the weather was clear and it was daylight outside. *Id.*

Mr. Sutton stated that he "almost immediately" recognized one of the men as someone whom he had known socially for about a year as "Smokie." This was the appellant. Sutton also recalled his observation of appellant's face, at a distance of about 30–40 feet, lasted for 45–50 seconds. The witness' view of the appellant as he walked away from him and toward the Beasley home amounted to 30 seconds. Mr. Sutton also noticed that the appellant was wearing a black jacket with a tan stripe on each sleeve.

After Sutton watched the two men walk to the rear of his neighbor's house, he lost sight of them because from his vantage point he could not see if they entered the premises. Nonetheless, he phoned the police to report a "burglary in progress" before leaving for work at 7:30 a.m. The police arrived on the scene within 15–20 minutes of the call and found that the house had been unlawfully entered through a broken rear window on the first floor. The second floor bedroom had been ransacked and Mr. Beasley, who had gone to work at about 6:30–6:35 a.m. that morning, advised the police of the loss of $1,940 in jewelry (three watches, three chains and one ring), coins he had stored in a glass jar, cameras and a .380 automatic pistol. Most of the stolen merchandise was recovered in the woods located behind Mr. Beasley's residence stuffed into two pillow cases. This is consistent with the testimony of Melinda Oliver, also a neighbor, who saw two black males running from the back of Mr. Beasley's house into the woods nearby with pillow cases (two) in hand. However, she could not identify either of the fleeing felons or recall what they were wearing.

After the Commonwealth introduced evidence that Mr. Sutton had identified the appellant from a photographic array, it concluded its case.

In defense, the appellant took the stand and testified that during the time in question he was at home, having been dropped off there by his uncle, Curtis Melvin, following an all night card game the evening before.

According to Curtis Melvin, a witness called by the defense, Ernest Beasley, Kevin Beasley and Robert Sutton entered his apartment within hours of the reported crime and found a bag in the lower shelf of his stove. The bag was emptied onto a chair. The contents were described by Melvin as consisting of an automatic pistol, various gold watches and jewelry monogramed with Ernest Beasley's wife's name. On rebuttal, Beasley denied having found any of the stolen merchandise in Melvin's apartment, albeit he did not dispute having entered the premises and telling Melvin to inform the appellant that he wanted his property back.

It appears that Beasley had learned from certain sources that the appellant, whom he thought to be the guilty party, was in Melvin's apartment. The trio went there to discuss with the appellant the return of the merchandise, but the appellant was neither present nor did he reside there.

After the entry of the jury's verdict, timely post-trial motions were filed, denied and sentence was imposed—two to eight years for burglary and a concurrent sentence of 2–8 years for criminal conspiracy. This appeal followed.

In assessing appellant's sufficiency of the evidence claim, we are mindful that the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence, which, of necessity, draws into play the affixing of a line of demarcation between the requisite degree of persuasion ("beyond a reasonable doubt") and impermissible speculation. *See Commonwealth v. Cimaszewski*, 447 Pa. 141, 288 A.2d 805 (1972). The former is required while the latter is not tolerated as the basis for a conviction. *Commonwealth v. Meredith*, 490 Pa. 303, 416 A.2d 481 (1980). Thus, in the Commonwealth's efforts to establish guilt predicated upon circumstantial evidence, it must be

kept in mind that, "[t]he inferred fact must flow, beyond a reasonable doubt, from the proven fact where the inferred fact is relied upon to establish the guilt of the accused or the existence of one of [the] elements of the offense." *Commonwealth v. Meredith, supra,* 490 Pa. at 310, 416 A.2d at 485. We believe that the prosecution has failed to do just that in the case here.

To illustrate our point, we look to this Court's recent holding in *Commonwealth v. Jones,* 312 Pa.Super. 496, 459 A.2d 11 (1983).

In *Jones,* at approximately 1:30 p.m., a Beatrice Woodall heard a "heavy thump" that caused her to rise from bed to investigate. She looked out her 1st floor rear window, found nothing unusual and returned to bed on the second floor. Shortly thereafter, she heard footsteps coming from the second floor of her next door neighbor's (Reverend Wallis') rowhouse. The Reverend had departed his locked premises at about 12:45 that afternoon and Ms. Woodall looked out her front window to find that he had not yet returned. Thus, she went to her back window and saw the appellant, Wallis' adjoining neighbor on the other side, and another man, walking in Wallis' enclosed back yard toward the rear of the fence. Appellant was observed with something under his arm. Both men then climbed the concrete fence separating the properties, jumped into appellant's yard and walked into appellant's home. Wallis returned at 2:30 p.m. to find his rear basement window knocked in and two cameras, several bottles of whiskey, jewelry and a coin collection missing.

Following the non-jury trial, the appellant was convicted of burglary, theft by unlawful taking, receiving stolen property and conspiracy. On appeal, we reversed on the basis that the evidence was circumstantial and established no more than appellant's mere presence at the scene. In particular, as is relevant here, we stated:

> Here, there is no direct evidence that appellant pushed in the window, entered the house and stole the various items. The Commonwealth's evidence merely places ap-

pellant and another individual in his neighbor's enclosed yard at the approximate time of the burglary. The Commonwealth has failed to offer any evidence indicating that appellant participated in the crime and thus, has failed to prove his guilt beyond a reasonable doubt. Accordingly, we must reverse the judgments of sentence and order appellant discharged. (Footnotes omitted)

*Id.*, 312 Pa.Superior Ct. at 499–500, 459 A.2d at 13 (Collecting cases concerning mere presence as insufficient, without more, to uphold a conviction).

▪ In the case *sub judice*, as in *Jones*, the appellant was "positively" identified as walking onto an individual's backyard whose premises were burglarized, with entry being made through a rear, ground level window. However, the weakness in the Commonwealth's case is the absence of any connection between the appellant's presence and innocuous actions ("walking") on the scene.[2] *See In re Amos*, 287 Pa.Super. 446, 430 A.2d 688 (1981) and *compare with Commonwealth v. Herman*, 271 Pa.Super. 145, 412 A.2d 617 (1979). "The relatively early hour of the day, although not wholly lacking in probative value, was insufficient to transform the Commonwealth's suspicious circumstances into proof beyond a reasonable doubt." (Footnote omitted) *Commonwealth v. Jones*, 291 Pa.Super. 69, 74, 435 A.2d 223, 226 (1981).

▪ Further, sufficient evidence also does not exist to support conviction for conspiracy. The facts and circumstances show neither a criminal agreement nor an overt act in furtherance of a criminal agreement. *See Commonwealth v. Johnson*, 272 Pa.Super. 375, 415 A.2d 1246 (1979). It must be remembered that, even assuming for the sake of argument that the goods were kept at Melvin's apartment, there is no evidence linking the accused with Melvin's premises aside from a familial relationship. Thus, this

2. On this question that conviction of a crime cannot rest upon mere presence, but that additional proof is required, *see Commonwealth v. Stanley*, 453 Pa. 467, 309 A.2d 408 (1973); *Commonwealth v. Stores*, 317 Pa.Super. 109, 463 A.2d 1108 (1983) (Collecting cases).

Court cannot make the leap from "surmise" as to how the goods may have found their way to the apartment and "reasonably inferring" appellant's involvement in a confederacy that unlawfully entered into Beasley's home for the purpose of committing a crime therein.

Accordingly, in light of the Commonwealth's failure to establish appellant's guilt beyond a reasonable doubt, *see Commonwealth v. Roscioli*, 454 Pa. 59, 309 A.2d 396 (1973); *Commonwealth v. Weaver*, 309 Pa.Super. 509, 455 A.2d 1199 (1982); *Commonwealth v. McCrea*, 308 Pa.Super. 284, 454 A.2d 132 (1982), we vacate the judgments of sentence and order the appellant discharged.

CIRILLO, J., files a dissenting opinion.

CIRILLO, Judge, dissenting:

I respectfully dissent.

Issues of credibility are left to the trier of fact for resolution. *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976). The dispositive issue turned on the credibility of the appellant himself.

Mere presence on the scene both immediately prior to and subsequent to the commission of a crime and flight there from is not sufficient evidence to prove involvement in the crime. *Commonwealth v. Goodman*, 465 Pa. 367, 370–71, 350 A.2d 810, 811–12 (1976); *see also Commonwealth v. Roscioli*, 454 Pa. 59, 309 A.2d 396 (1973); *Commonwealth v. Jones*, 291 Pa.Super. 69, 435 A.2d 223 (1981). The instant case is distinguishable from *Goodman, supra*, and its progeny. The appellant took the stand in his own defense and testified as to his whereabouts on the morning of the burglary. He stated that he was at home.

On appellate review of a criminal conviction, it is not our function to weigh the evidence, thereby substituting our judgment for that of the trier of fact. *Commonwealth v. Farquharson, supra*. Had the appellant not taken the stand in order to present an alibi, the evidence of presence and flight from the scene would have stood alone as the

only pieces of circumstantial evidence. However, those factors combined with the alibi provide a sufficient basis for conviction. *See Commonwealth v. Rosetti*, 322 Pa.Super. 536, 469 A.2d 1121 (1983).