523 A.2d 1169

**COMMONWEALTH of Pennsylvania**

v.

**Sheldon BROOKS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 26, 1987.

Filed April 6, 1987.

Kelly, J., concurred in the result.

John F. Goryl, Carlisle, for appellant.

John M. Eakin, District Attorney, Carlisle, for Com., appellee.

Before BECK, KELLY, and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the judgment of sentence for attempted homicide, two counts of aggravated assault, and two counts of assault by a prisoner. Appellant contends that the lower court erred in denying his exceptions to the prosecutor's closing remarks. For the reasons that follow, we vacate the judgment of sentence and remand for a new trial.

Appellant, an inmate at the State Correctional Institution at Camphill, was charged with assaulting two guards on September 12, 1983. Following a jury trial, appellant was found guilty of attempted homicide, two counts of aggravated assault, and two counts of assault by a prisoner. He was sentenced to five-to-ten-years imprisonment for attempted homicide and a concurrent three-to-five-year term of imprisonment for one of the aggravated assault charges, and the remaining charges merged for sentencing purposes. This appeal followed.

Appellant contends that the lower court erred in denying his exceptions to the prosecutor's closing remarks. He argues that the district attorney, by making several statements about matters not in evidence, improperly testified during his closing argument. We agree.

■ A prosecutor must limit closing remarks to the facts in evidence and the legitimate inferences that may be drawn therefrom. *Commonwealth v. Anderson*, 490 Pa. 225, 229, 415 A.2d 887, 888 (1980); *Commonwealth v. Harvell*, 458 Pa. 406, 410, 327 A.2d 27, 30 (1974). The prosecutor may not argue facts outside the record "unless such facts are matter of common public knowledge based on ordinary human experience or matters of which the court may take judicial notice." *Commonwealth v. Danzy*, 234 Pa.Superior Ct. 633, 638, 340 A.2d 494, 497 (1975). The reason for this rule is that, because of the very nature of the prosecutor's position, any facts testified to by a district attorney are likely to be accorded great weight by the average jury. *Commonwealth v. Bolden*, 227 Pa.Superior Ct. 458, 460, 323 A.2d 797, 798 (1974). "Consequently, improper suggestions, insinuations and, *especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.*" *Id.* (emphasis in original) (citing *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)). To hold otherwise would create "the danger of a jury's reliance upon hearsay or the prosecutor's conclusions, and the possibility that the jury's verdict will be based on evidence not presented at trial." *Commonwealth v. Caesar*, 224 Pa.Superior Ct. 266, 271, 302 A.2d 846, 848 (1973) (HOFFMAN, J., Opinion in support of reversal). Accordingly, "[m]atters not developed at trial should not be presented to the jury at the conclusion of the case." *Id.* In addition, we note that the Code of Professional Responsibility provides that:

(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

\* \* \* \* \* \*

(3) assert his personal knowledge of the facts in issue, except when testifying as a witness.

Code of Professional Responsibility DR 7–106 (1974).

■ Here, the district attorney made the following remarks during his closing argument:

Now, there has been an argument by Mr. Masland [appellant's attorney] that there is a reasonable doubt

here because we have not presented to you any finger-print testimony. I believe you can conclude from the evidence that none of these items, 8 and 9, 2 and 3, was ever submitted to a laboratory for fingerprint analysis.

Well, first of all, why would you submit something for fingerprint analysis? You submit it for fingerprint analysis if you wanted to figure out who had done a crime. It was not really necessary to submit any of these items for fingerprint analysis because it was perfectly clear as a result of an identification by at least five correctional officers who had committed this crime.

Secondly, Mr. Masland went to fairly great lengths to say and to establish as a matter of evidence that there were only three people who touched these items after the incident. The defendant himself was supposed to have touched them, the officers who picked them up were supposed to have touched them, and at least one officer is supposed to have touched them when he received them. I believe with regard to the bed end and the mop, two officers in addition to the officer who picked the items up touched them.

Well, that is accurate as far as it goes. But do you suppose they were mopping the floor between their arms when they used this item? Really, come on, be reasonable. How many fingerprints—if fingerprints can even be taken off of a porous substance like wood, how many fingerprints do you imagine are on this item? Overlapping it, one fingerprint overlapping another, overlapping another, rubbing one off. Every time it is touched by somebody fingerprints are put on it. If it is even a surface that is receptive to fingerprints.

You all know enough about fingerprints to know how fingerprints appear on substances, that it is a grease that your body emits through the skin and that that sticks to a surface. Use your common sense. Could they even be taken off of wood like this?

How do you think this bed end was pried off of the bed that it was part of? I submit to you it wasn't by

somebody using gloves so as not to leave fingerprints. This item is a bed end. If somebody wanted to move their bed, they probably grabbed it like this and moved it out, or moved it this way. (Indicating) When somebody took it off of a bed because he didn't want his bed on the frame anymore, they had to handle this item. Literally hundreds of people could have handled that item.

What about the floor brush? Do you think floors are scrubbed by people holding this in their teeth as they scrubbed the floor? Or were they holding it with their hands and putting fingerprints on it?

Common sense tells you, ladies and gentlemen, that you can't take fingerprints off of an item that has such a history of repeated use. Now, the Commonwealth didn't introduce evidence about what you can and can't do with fingerprints because there is no fingerprint evidence. But don't let them use the argument that there is a reasonable doubt because there is no fingerprints when they haven't put on a witness to establish that fingerprint evidence could be recovered in a situation like this. They are asking you to speculate. They are asking you to speculate on the existence of evidence when there simply is no way for you to speculate or for you to determine whether such evidence would be helpful in this case.

N.T. February 26, 1985, In re: Closing Arguments at 29–32. As was conceded by the prosecutor in his closing argument, absolutely no evidence was introduced at trial regarding fingerprints. Thus, these remarks went far beyond the scope of facts in evidence or any legitimate inferences that could be drawn from those facts. The prosecutor was, in effect, testifying as to the nature of fingerprints and the difficulty in obtaining fingerprint evidence from the weapons used because of the material they were made of and the number of people who handled them. This type of testimony is impermissible because it was based on facts that are not a matter of common public knowledge or a matter of which the court may take judicial notice. *See Commonwealth v. Danzy, supra; see also Beneficial Consumer Discount Co. v. Savoy,* 291 Pa.Superior Ct. 649, 653, 436

A.2d 687, 689 (1981) (judicial notice may be taken only of matters of common knowledge, of facts which are so well known that they are incontestable). Accordingly, we conclude that the closing remarks regarding fingerprint evidence amounted to an impermissible assertion of personal knowledge by the district attorney and the lower court erred in denying appellant's exception to the remarks.

Appellant also objects to another remark that the district attorney made during his closing argument. To rebut appellant's contention that the actual assailants of the guards wore masks fashioned out of ski caps issued by the prison, the district attorney also made the following remarks during his closing argument:

> Sergeant Diehl didn't see any ski caps. No other correctional officer saw any ski caps. The [appellant] himself didn't even testify that he saw any ski masks or ski caps. Two witnesses talk about these alleged ski masks. The only knit cap that ever came into the courtroom was on the head of a third defense witness who didn't talk about the ski masks, because he wasn't a witness to that part of the incident. So he wears a knit cap into the courtroom. And certainly that knit cap isn't something that could have been used to pull down over your head and make a ski mask out of it.

N.T. February 26, 1985, In re: Closing Arguments at 32. Appellant argues that the effect of the prosecutor's remarks was to place a prison-issued ski cap into evidence by reference to a hat that one of the defense witnesses was wearing at trial. We agree.

▉ As conceded by the Commonwealth, no ski cap was admitted into evidence. Appellant asserts that the knit hat worn by one of his witnesses was not of the type allegedly worn by the guards' assailants, but rather "is one with religious significance to the Muslim religion." N.T. February 26, 1985 at 2–77. Regardless of whether appellant's assertion is correct, the Commonwealth was able to establish through its closing argument what it had failed to establish in its case-in-chief or by cross-examination—what a ski cap issued by the prison looks like. This type of

evidence is not a matter that the jury would know from personal experience nor a matter of which the court could take judicial notice. Thus, we conclude that the prosecutor's remarks concerning the knit hat worn by a defense witness amounted to an improper comment on facts not in evidence.

The Commonwealth argues that, should we conclude that the prosecutor's remarks were improper, the error was de minimis. Brief for Appellee at 19. We disagree. "[A]n error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless" and the Commonwealth has the burden of establishing that such error was harmless beyond a reasonable doubt. *Commonwealth v. Story*, 476 Pa. 391, 405–06, 383 A.2d 155, 162 (1978). "[A]n error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict." *Id.*, 476 Pa. at 412, 383 A.2d at 166 (citing *Commonwealth v. Davis*, 452 Pa. 171, 178–79, 305 A.2d 715, 719 (1973)). The untainted evidence relied upon to determine whether there is overwhelming evidence of guilt must be uncontradicted. *Id.*, 476 Pa. at 413, 383 A.2d at 166.

■ Here, the untainted evidence introduced by the Commonwealth to prove appellant's guilt was not uncontradicted. The central issue of the case was identification. To rebut the Commonwealth's testimony that appellant had committed the assaults, the appellant and three other defense witnesses testified that persons other than appellant were the assailants. Thus, because the Commonwealth's evidence was contradicted, we conclude that the untainted evidence establishing guilt was not overwhelming and, therefore, the error created by the prosecutor's remarks during closing argument was not harmless.

Moreover, we find the prosecutor's remarks to be particularly troublesome because they amounted to an admission of further evidence after the defense had rested. The Commonwealth must prove its case during its case-in-chief.

It may address defense arguments during its closing argument but the Commonwealth must confine its rebuttal to facts already in evidence. The Commonwealth cannot wait, however, until the defense has rested to fill any evidentiary gaps created by the defense's arguments. Such tactics impermissibly deny the defense a chance to rebut the Commonwealth's evidence.[1]

For the foregoing reasons, we vacate the judgment of sentence and remand for a new trial.[2]

Vacated and remanded. Jurisdiction is relinquished.

KELLY, J. concurs in the result.

---

1. In addition, we note that the lower court refused to give curative instructions to the jury regarding the remarks concerning fingerprint evidence and the ski cap, despite the fact that defense counsel requested the court to do so. N.T. February 26, 1985 at 2–76 to 2–78.

2. Appellant also contends that (1) the evidence was insufficient to support the conviction; (2) the verdict is against the weight of the evidence; and (3) the lower court erred in denying his exceptions to inflammatory and prejudicial remarks made by the prosecutor during his closing argument. We conclude that the lower court has correctly disposed of these contentions.