575 A.2d 131

**COMMONWEALTH of Pennsylvania**

v.

**Daniel ALLEN, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 2, 1989.

Filed May 15, 1990.

Petition for Allowance of Appeal Denied
Oct. 10, 1990.

128

Dominick Motto, New Castle, for appellant.

William M. Panella, Dist. Atty., New Castle, for Com., appellee.

Before CIRILLO, President Judge, and DEL SOLE and CERCONE, JJ.

DEL SOLE, Judge:

Daniel Allen, Appellant, was convicted of Driving Under the Influence (DUI), 75 Pa.C.S.A. § 3731(a)(1) and (a)(4). Post-verdict motions were denied and Allen was sentenced. On appeal he raises five issues. Because all of the issues are meritless, we affirm the trial court's judgment of sentence.

Allen's conviction for DUI was the culmination of a complicated procedural process. Allen was arrested for DUI under 75 Pa.C.S.A. § 3731(a)(1) and (a)(4). Police took him to Ellwood City Hospital where a blood sample was taken. The sample was given to the arresting officer who took it back to the Ellwood City Police Station and placed it in a refrigerator. The following day another officer took the only blood sample in the police station refrigerator to St. Francis Hospital for chemical testing. The hospital reported that the blood alcohol level in the sample was 0.16%.

At a preliminary hearing, the arresting officer attempted to introduce the blood test results into evidence. Allen's attorney objected, asserting that the officer did not lay a proper foundation to establish that St. Francis was an approved laboratory for chemical testing in DUI cases. The District Justice sustained the objection and the blood test results were not admitted into evidence.

The arresting officer then moved to withdraw the complaint against Allen which was granted. All of the charges against Allen were withdrawn and he was discharged. Notice of the withdrawal was sent to Allen and he was informed that the complaint against him would be re-filed. Three days later a second complaint was filed against Allen and he received service of both the new complaint and a summons. Despite defense counsel objections, a second preliminary hearing was held at which a prima facie case against Allen was established. He was bound over to court.

Allen filed a pre-trial omnibus motion challenging the Commonwealth's procedures regarding the filing of the

second complaint. The trial court ordered the case dismissed. Twenty-two days later the court amended its order, withdrew the dismissal of the case against Allen and dismissed the omnibus motion. Allen filed a petition for a writ of habeas corpus and/or a motion to dismiss and/or strike the order of court, arguing that the court lacked authority to issue the second order withdrawing the dismissal of the case without prior notice to the parties. The basis for this argument was 42 Pa.C.S.A. § 5505. A hearing was held, and although the Commonwealth agreed with Allen's position, the trial court denied his petition.

At a non-jury trial, Allen argued that no evidence was presented to show that Ellwood City Hospital was an approved laboratory for withdrawing blood samples, the blood withdrawal was not properly supervised, the procedures used for withdrawal and transportation of the blood were improper, the laboratory technician was not supervised or qualified to draw blood and the chain of custody of the blood sample was broken. Despite his arguments, the blood sample was admitted into evidence and Allen was found guilty of both charges of DUI.

The first issue raised by Allen on appeal is whether he was entitled to have the charges against him dismissed because the initial charges against him were withdrawn and the second complaint was filed without a re-arrest. We hold that there was no need for the Commonwealth to re-arrest Allen.

In a court case, the issuing authority may, in its discretion, issue a summons or a warrant of arrest if the offense charged is punishable by a sentence of more than one year and less than five years in prison. Pa.Rules of Crim.Proc., Rule 102(c). Driving under the influence is a misdemeanor of the second degree. It is punishable by a sentence of not more than two years in prison. 18 Pa.C.S.A. § 106(b)(7). Consequently, the service of a summons on Allen was a proper method to reinstitute the charges against him. The fact that this service was enough to make Allen appear at the subsequent preliminary hearing belies the argument

that a second arrest was required. There is no authority which requires the Commonwealth to re-arrest a person in order to begin a subsequent prosecution for the charge of DUI.

The second issue is whether the trial court lacked the authority to reinstate the charges and withdraw the court ordered dismissal within thirty days of the initial order, without prior notice to the parties. This issue is also meritless. The statute Allen bases his argument on is 42 Pa.C.S.A. § 5505. This statute reads:

> Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within thirty days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or filed.
> 42 Pa.C.S.A. § 5505

The statute contains no requirement that the court give the parties prior notice before modifying or withdrawing an order. Allen has presented us with no authority which would require such a reading of the statute. According to the statute, a court must notify the parties when it modifies or rescinds an order, but this notice does not have to be prior to the modification.

The third issue raised by Allen is whether the trial court erred in introducing evidence of the blood test at trial because the chain of custody was broken. We say no. The Commonwealth presented testimony which showed who had possession and control of the blood sample from the time it was withdrawn from Allen to the time it was tested and brought to court. There is no need for the Commonwealth to prove beyond a doubt the sanctity of a blood sample after it is withdrawn from a driver. The Commonwealth must simply establish a reasonable inference that the sample was unimpaired until it was brought to court. *Commonwealth v. Miller*, 234 Pa.Super. 146, 339 A.2d 573 (1975).

The fourth issue raised by Allen is whether the trial court erred in introducing the blood test results because the blood sample was not withdrawn at an approved clinical

laboratory, the blood test was not properly supervised and the test was not administered by a laboratory technician. Again, we hold that the trial court did not err.

Allen was convicted of 75 Pa.C.S.A. § 3731(a)(1), driving or being in the actual physical control of a vehicle while "under the influence of alcohol to a degree which renders the person incapable of safe driving;" and 75 Pa.C.S.A. § 3731(a)(4), driving or being in actual physical control of a vehicle while "the amount of alcohol by weight in the blood of the person is 0.10% or greater." In order to support a conviction under 3731(a)(4), the Commonwealth may present tests performed on a defendant's blood or breath if the "tests were conducted by qualified persons using approved equipment...." 75 Pa.C.S.A. § 1547(c). Specifically,

Chemical tests of blood or urine shall be performed by a clinical laboratory licensed and approved by the Department of Health for this purpose using procedures and equipment prescribed by the Department of Health. For purposes of blood and urine testing, qualified person means an individual who is authorized to perform those chemical tests under the act of September 26, 1951 (P.L. 1539, No. 389), known as "The Clinical Laboratory Act." 75 Pa.C.S.A. § 1547(c)(2).

The trial court wrote that:

[w]hile the Ellwood City Hospital was not proven to be a technical laboratory licensed by the Pennsylvania Department of Health or its staff certified under the Clinical Laboratory Act, 35 P.S. §§ 2151–2165, so as to qualify that hospital and its staff to do blood testing under 75 Pa.C.S.A. § 1547, the Court finds from the testimony presented and by way of judicial notice (P.L.E.Evidence §§ 1–14) that it is an established clinical laboratory whose staff is qualified to take blood samples.

Trial Court opinion at p. 8.

In the past, this court has held that § 1547(c) and its corresponding regulations "focus on the person performing the blood testing and the equipment used, not the technician drawing the blood." *Commonwealth v. Mahaney*, 373

Pa.Super. 129, 136, 540 A.2d 556, 559 (1988). If a driver is taken to a hospital for a blood sample in a DUI case, the Commonwealth must show that the blood sample was withdrawn by a hospital employee who was qualified to take blood samples. That employee does not have to meet the requirements of 75 Pa.C.S.A. § 1547(c)(2). The Commonwealth made this showing at trial and the trial judge properly accepted the person who withdrew the blood from Allen as qualified.

The fifth and final issue raised by Allen is whether the verdict was against the weight of the evidence and whether the evidence was insufficient as a matter of law. The trial court reviewed the testimony of the police officers and one other witness:

Officer Yoho testified that when he arrived at the scene of the accident on August 27, 1988, during the early morning hours, he saw Allen's vehicle and two other vehicles, all of which were damaged to some degree. He also testified that the other two vehicles were resting partly on the sidewalk and partly on the roadway. Officer Yoho further testified that, in observing Allen, he noticed Allen had blood-shot eyes and slurred speech and possibly an injured right hand. After administering a field sobriety test, it was Officer Yoho's opinion that Allen performed unsatisfactory and did not pass the test. Officer Yoho also testified that Allen at the scene of the accident explained to him (Officer Yoho) that he (Allen) was driving his truck around the bend and lost control of it.

Officer David Mitchell also testified regarding the damaged vehicles. He observed Allen's truck at rest in the east bound lane of Lawrence Avenue and the other two vehicles pushed onto the curb. When Officer Mitchell arrived at the scene, he observed Allen standing next to his red pickup truck and, after approaching Allen, noticed the odor of alcohol on Allen's breath. Officer Mitchell also testified of observing Officer Yoho administering a field sobriety test to Allen which, according to Officer Mitchell, Allen "failed."

Now, as to Henry Allman's testimony, he stated that, on the day in question, he was watching television and heard a loud crash in front of his house. As he immediately exited his residence, he observed his truck on the side walk and his sister's car pushed forward in front of his truck. He also testified that a red pickup truck, with Allen seated in it on the driver's side, was behind his (Allman's) truck. All three vehicles were damaged according to Henry Allman's testimony Henry Allman then testified that he went over to Allman and asked if he was injured and invited Allen into his house. Henry Allman testified that he noticed an order (sic) of alcohol about Allen's person and that Allen was "shook up."

Trial Court opinion at pp. 15–16.

In order to hold that a verdict was against the weight of the evidence, it must be clear from the record that the verdict shocks this court's sense of justice. *Commonwealth v. Hamilton*, 376 Pa.Super. 404, 546 A.2d 90 (1988). This testimony, along with the fact that the blood sample taken from Allen showed that his blood alcohol level was 0.16%, easily supports the conviction of Allen of 75 Pa.C.S.A. § 3731(a)(1) and (4). There was nothing shocking about this verdict. Therefore, we hold that the verdict was not against the weight of the evidence.

When deciding whether the evidence was insufficient to support the verdict, this court must consider the evidence and all the inferences to be drawn from the evidence, in a light most favorable to the verdict winner, in this case the Commonwealth. *Commonwealth v. Vogel*, 501 Pa. 314, 461 A.2d 604 (1983). Given the evidence summarized above, and Allen's blood alcohol level, we hold that there was sufficient evidence to prove beyond a reasonable doubt that Allen was driving while under the influence of alcohol under 75 Pa.C. S.A. § 3731(a)(1) and (4).

Judgment of sentence affirmed.

CIRILLO, President Judge, files a concurring and dissenting opinion.

CIRILLO, President Judge, concurring and dissenting:

I concur in the majority's disposition of the "re-arrest" issue but write separately to further define the term "re-arrest." In addition, I respectfully dissent from the majority's finding that the Commonwealth's evidence was sufficient to prove, beyond a reasonable doubt, that Allen drove while his blood alcohol level exceeded .10 percent.

The Pennsylvania Rules of Criminal Procedure do not define the term "re-arrest," and the majority correctly notes that "[t]here is no authority which requires the Commonwealth to re-arrest a person to begin a subsequent prosecution for the charge of DUI." Clearly, filing the complaint was sufficient to re-institute the charges against Allen. *See* Pa.R.Crim.P. 101 and 130. The term "re-arrest" refers not to the start of a new criminal proceeding, but rather to the process used to ensure Allen's attendance at his next court date. It is an inexact term which has, in the past, been used without careful distinction. "Re-arrest" describes either of two different procedures: the issuance of an arrest warrant or the issuance of a summons.

There are two methods by which the Commonwealth may institute criminal proceedings; filing a written complaint or executing an arrest. Pa.R.Crim.P. 101.[1] When a complaint is utilized, the Commonwealth insures the defendant's appearance in court by issuing an arrest warrant or a sum-

1. Rule 101, entitled "Means of Instituting Proceedings in Court Cases," states:
  Criminal proceedings in court cases shall be instituted by:
    1. filing written complaint; or
    2. an arrest without a warrant when the offense is a felony or misdemeanor committed in the presence of the police officer making the arrest; or
    3. an arrest without a warrant upon probable cause when the offense is a felony; or
    4. an arrest without a warrant upon probable cause when the offense is a misdemeanor not committed in the presence of the police officer making the arrest, when such arrest without a warrant is specifically authorized by statute.
  Pa.R.Crim.P. 101.

mons. Pa.R.Crim.P. 102.[2] An arrest warrant allows the police to arrest and incarcerate the defendant until his court date. A summons, on the other hand, allows the defendant to remain at large until the appointed day. The summons, accompanied by a copy of the complaint "command[s] the defendant ... to appear before the issuing authority...." Pa.R.Crim.P. 110. The summons also notifies the defendant of his right to counsel, that bail will be set at his preliminary hearing, and that failure to appear at the preliminary hearing will result in the issuance of a warrant for the defendant's arrest. Pa.R.Crim.P. 110(1)–(3).

While this process appears unambiguous, it becomes much less clear when the initial proceedings are terminated for some reason and later re-instituted. The case law acknowledges that after a second complaint is filed initiating the second criminal proceeding, the Commonwealth must re-arrest the defendant "within the period prescribed by the statute of limitations for the charges in question," *Commonwealth v. Revtai,* 516 Pa. 53, 74, 532 A.2d 1, 11 (1987), but the proper procedures necessary to effectuate a re-arrest have not been enunciated. *See e.g. Common-*

---

**2.** Rule 102, entitled "Use of Summons or Warrant of Arrest in Court Cases," states:

If a complaint charges an offense which is a court case, the issuing authority with whom it is filed shall:

(a) issue a summons and not a warrant of arrest in cases in which the offense charged is punishable by a sentence of imprisonment of not more than one year, except as set forth in paragraph (b).

(b) issue a warrant of arrest when:

(1) the offense charged is punishable by a sentence to imprisonment of more than five years; or

(2) the issuing authority has reasonable grounds for believing that the defendant will not obey a summons: or

(3) the summons has been returned undelivered; or

(4) a summons has been served and disobeyed by a defendant; or

(5) the identity of the defendant is unknown.

(c) issue a summons or a warrant of arrest, within the issuing authority's discretion, when the offense charged does not fall within any of the categories specified in paragraphs (a) or (b).

(d) when a defendant is charged with more than one offense and one of such offenses is punishable by a sentence to imprisonment for more than five years, a warrant of arrest shall be issued. Pa.R.Crim.P. 102.

*wealth ex rel. Fitzpatrick v. Mirarchi,* 481 Pa. 385, 390, 392 A.2d 1346, 1348 (1978) ("[t]his court has acknowledged that re-arrest is the appropriate procedure and the Commonwealth's only recourse where the charges are dismissed and the defendant discharged upon a finding of a lack of a prima facie case ..."); *Commonwealth v. Sandly,* 371 Pa.Super. 486, 488, 538 A.2d 546, 546 (1988) ("[a]ppellee was then re[-]arrested on the same charge pursuant to a [second] written complaint"); *Commonwealth v. Tait,* 369 Pa. Super. 315, 318, 535 A.2d 176, 178 (1987) (footnote omitted) ("[a]ccording to the record before us, the proceedings against appellee were initiated when the second complaint was filed; thereafter, appellee was 're[-]arrested' ").

"An arrest occurs 'with any act that indicates an intention to take a person into custody and subjects him to the actual control and will of the person making the arrest.' " *Commonwealth v. Lagana,* 517 Pa. 371, 377–378, 537 A.2d 1351, 1355 (1987) (citation omitted). Literally, the term "re-arrest" means to arrest again. Thus, it would seem that in order to re-arrest a person, an act is necessary that subjects the person to the actual dominion and control of the arrestor. However, that definition would be antithetical to our Rules of Criminal Procedure which do not require an arrest in every criminal proceeding. *See* Pa.R.Crim.P. 101 and 102. For example, when the crime charged is driving under the influence, special procedures are available under Rule 130:

\* \* \* \* \* \*

(b) When a defendant has been arrested without a warrant for driving under the influence of alcohol or controlled substances, the arresting officer may, when he deems it appropriate, promptly release the defendant from custody rather than taking him before the issuing authority.

\* \* \* \* \* \*

(d) When a defendant is released pursuant to paragraph[ ] (b) ..., a complaint shall be filed against the defendant within five (5) days of the defendant's release.

*Thereafter, a summons, not a warrant of arrest,* shall be issued and the case shall proceed as provided in [Pennsylvania Rule of Criminal Procedure] 110.

Pa.R.Crim.P. 130(b) and (d) (emphasis added). Under Rule 130, the use of a summons, instead of an arrest warrant, is mandated. *See* Pa.R.Crim.P. 130; 102, comment ("in all cases in which the defendant has been released pursuant to Rule 130(b) or (c), a summons shall be issued"). Consequently, we cannot interpret the term "re-arrest" literally.

I believe that under our Rules of Criminal Procedure, a re-arrest is accomplished simply by reissuing process upon a defendant. Specifically, after filing the second complaint which commences the second criminal action, the Commonwealth, to effectuate a re-arrest, need only issue a summons *or* arrest warrant. *See Tait, supra* (court states that defendant was re-arrested and facts indicate that only a second complaint and summons were issued). The reissuance of process is an element that remains constant in both the terminated first criminal proceeding and the institution of a second proceeding. Accordingly, Allen's assertion that the Commonwealth is required to "formally arrest" him by subjecting him to the Commonwealth's dominion and control is without merit. The record reveals that the Commonwealth followed the proper procedures: it re-instituted a criminal action against Allen by filing a complaint and then re-arrested him by issuing a summons.[3]

With respect to Allen's final issue, I dissent from the majority's finding that the Commonwealth introduced sufficient evidence to convict Allen of operating his truck while "the amount of alcohol by weight in [his] blood [was] 0.10% or greater." 75 Pa.C.S. § 3731(a)(4). The Commonwealth did not present expert testimony relating the blood alcohol reading obtained at least one hour after Allen last drove his truck to his blood alcohol level at the time of actual opera-

---

**3.** The majority opinion incorrectly states that "the service of a summons on Allen was a proper method to *reinstitute* the charges against him." (emphasis added). However, as I have just illustrated, filing the complaint reinstituted the charges against Allen while the issuance of the summons re-arrested him.

tion. Without such evidence, the court's verdict was based on speculation and I would not allow it to stand.

It is axiomatic that the Commonwealth had the burden of proving each and every element of section 3731(a)(4) beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Commonwealth v. McNeil*, 461 Pa. 709, 337 A.2d 840 (1975); *Commonwealth v. Santiago*, 376 Pa.Super. 54, 545 A.2d 316 (1988). The Commonwealth was required to prove "(1) the operation of a vehicle, and (2) the presence of at least .10 [percent] alcohol by weight in [Allen's] blood *during the course of that operation.*" *Commonwealth v. Boyd*, 373 Pa.Super. 298, 300, 541 A.2d 21, 22 (1988) (*en banc*) (emphasis added). Unlike a violation of section 3731(a)(1), driving under the influence to a degree that renders a motorist incapable of safe driving, a section 3731(a)(4) violation cannot be proven by objective observations concerning a motorist's appearance, odor, and demeanor. A particular blood alcohol level can only be discerned through empirical tests. If those tests are not performed immediately after the alleged section 3731(a)(4) violation occurred, expert testimony instructing the fact finder on how to interpret and use the test results is imperative. *See Commonwealth v. Slingerland*, 358 Pa. Super. 531, 536, 518 A.2d 266, 269 (1986) (Cirillo, P.J., dissenting).

Allen claims the Commonwealth presented insufficient evidence to support the court's conviction. Our standard of review is well settled; we must view all the evidence, and all reasonable inferences to be drawn therefrom, in the light most favorable to the Commonwealth as verdict winner. *Boyd*, 373 Pa.Super. at 301, 541 A.2d at 22; *Commonwealth v. Speights*, 353 Pa.Super. 258, 509 A.2d 1263 (1986). Utilizing this standard, I find the Commonwealth failed to meet its burden as it offered *no* direct evidence of Allen's blood alcohol level at the time he operated his truck. Moreover, my review of the record demonstrates that Allen's blood alcohol level at the time of operation could not be inferred from the circumstantial evidence presented by the

Commonwealth. Inferences are circumstantial evidence and can form the basis for a criminal conviction only when they follow, beyond a reasonable doubt, from proven facts. *Commonwealth v. Saccol*, 384 Pa.Super. 161, 557 A.2d 1095 (1989); *Commonwealth v. Paschall*, 333 Pa.Super. 323, 482 A.2d 589 (1984); *Commonwealth v. Sojourner*, 268 Pa.Super. 472, 408 A.2d 1100 (1978), *on rehearing*, 268 Pa.Super. 488, 408 A.2d 1108 (1979). The inference that Allen's blood alcohol level exceeded .10 percent when he drove his truck does not follow ineluctably from the facts proven at trial and thus, the Commonwealth's evidence was insufficient to sustain Allen's conviction under 75 Pa.C.S. § 3731(a)(4).

Officer Robert Yoho testified for the Commonwealth and stated that when he arrived at the scene of the accident, he observed that Allen "had an odor of alcoholic beverage, he had bloodshot eyes, he had slurred speech, and I believe he was injured." These facts, when combined with the occurrence of the accident, are sufficient to convict Allen of driving under the influence to a degree that rendered him incapable of safe driving, section 3731(a)(1). *See Commonwealth v. Wright*, 362 Pa.Super. 464, 524 A.2d 970 (1987); *Commonwealth v. Monosky*, 360 Pa.Super. 481, 520 A.2d 1192 (1987). Notwithstanding its sufficiency with regard to section 3731(a)(1), each of these facts, when considered alone or in conjunction with each other, easily lead to an inference other than a blood alcohol level greater than .10 percent. In fact, these objective observations do not provide any insight into Allen's precise blood alcohol level at the time of the accident. Instead, Officer Yoho's observations lead only to a possible inference that Allen had been drinking at some earlier time. However, the Commonwealth did not prove that drinking a large quantity of alcoholic beverages caused the odor, bloodshot eyes, and slurred speech. The odor of alcohol could have resulted either from Allen's consumption of a small amount of alcohol or someone spilling their drink on him. Also, the slurred speech and the bloodshot eyes could simply have been side effects of the injuries sustained by Allen during

the accident. Henry Allman's testimony, presented by the Commonwealth, supports this conclusion. Allman, who lives adjacent to the street where the accident occurred, was the first person to offer assistance to Allen. Allman testified that the windshield on the driver's side of Allen's truck was "somewhat shattered" and that immediately after the accident, Allen was "shook up." As illustrated, none of the officer's testimony creates any inference as to Allen's precise blood alcohol content. Also, the evidence is just as consistent with an inference that Allen consumed little or no alcohol as it is with an inference that he drank heavily. Because the inference of a blood alcohol level greater than .10 percent does not flow, beyond a reasonable doubt, from officer Yoho's testimony, it cannot form the basis of Allen's conviction under section 3731(a)(4). *See Saccol, supra; Paschall, supra; Sojourner, supra.*

Officer Yoho also stated that he administered several field sobriety tests and that Allen failed all of them.[4] This indicates that *after the accident*, Allen's motor skills were impaired. There are several inferences which can be drawn from this fact. First, if Allen's motor skills were impaired prior to the accident, the only inference that would arise is that Allen was incapable of safe driving. If the impairment was caused by alcohol consumption, this inference is relevant to section 3731(a)(1). However, a finding of a particular blood alcohol level does not inevitably follow from that inference and therefore adds nothing to a prosecution under section 3731(a)(4). On the other hand, it is possible that the impaired motor skills resulted solely from the injuries suffered during the accident and no inference concerning the cause of the impairment would arise. Regardless, an inference of a blood alcohol level greater than .10 percent does not flow unavoidably from failed sobriety tests and therefore could not form the basis of Allen's section 3731(a)(4)

4. Officer Yoho asked Allen to close his eyes and touch his nose with his index finger, to pick up coins that the officer dropped on the street, to walk in a straight line by placing the heel on the ground first and then rolling forward to the toe, and to complete a 180 degree turn.

conviction. *See Saccol, supra; Paschall, supra; Sojourner, supra.* Since the court could not use any of the aforementioned facts to infer Allen's blood alcohol level at the time of the accident, its verdict on the section 3731(a)(4) count must have been based entirely on the results of the blood alcohol test.

Officer David Mitchell testified that he was dispatched to the scene of the Allen accident sometime between 3:10 a.m. and 3:20 a.m.[5] The testimony of Laura Falen established that the blood was drawn from Allen at 4:20 a.m., at least one hour after Allen last operated his truck. The test performed on the blood sample yielded a blood alcohol level of .16 percent. To infer, beyond a reasonable doubt, a blood alcohol content of .10 percent or greater at 3:20 a.m., the court would have to extrapolate from the blood alcohol level at 4:20 a.m. This requires knowledge of, *inter alia,* how alcohol is metabolized. The Commonwealth should not be allowed to presume that any fact finder possesses such knowledge. Consequently, without expert testimony on how to perform such a calculation, the court could only surmise the rate at which Allen's body absorbed the alcohol he consumed. Because of the guesswork involved, the fact finder, in the absence of expert testimony, could not use the blood alcohol level at 4:20 a.m. to infer, beyond a reasonable doubt, Allen's blood alcohol content at 3:20 a.m. *Paschall, supra* (a criminal conviction cannot be based on impermissible speculation); *Commonwealth v. Croll,* 331 Pa.Super. 107, 480 A.2d 266 (1984) (a criminal conviction cannot be based on mere surmise or conjecture); *Commonwealth v. Gordon,* 329 Pa.Super. 42, 477 A.2d 1342 (1984) (a guilty verdict cannot be based on suspicion). Since no inference concerning Allen's blood alcohol level at 3:20 a.m. can be made, the blood test proved only that Allen's blood alcohol level exceeded .10 percent one hour after he drove. *See generally Slingerland,* 358 Pa.Super. at 536, 518 A.2d at 269 (1986) (Cirillo, P.J., dissenting); *see also State v. Mc-*

---

**5.** Because I must view the facts in the light most favorable to the Commonwealth, I will assume that the accident occurred at 3:20 a.m.

*Donald,* 421 N.W.2d 492, 494 n. 2 (S.D.1988) (although an expert need not perform the extrapolation, "the evidence necessary to enable the court and/or the jury to extrapolate is required in prosecutions [for driving with a blood alcohol level greater than .10 percent] . . . to obtain instructions on the presumption [that a driver with a blood alcohol content of .10 percent or greater is intoxicated]"); *State v. Dumont,* 146 Vt. 252, 254, 499 A.2d 787, 789 (1985) ("relation back testimony [is] necessary to establish the defendant's blood alcohol content at the time of actual operation"). Accordingly, the Commonwealth has failed to prove the elements of section 3731(a)(4) beyond a reasonable doubt. *See Boyd, supra.*

The majority is apparently relying on *Boyd, supra,* to support its finding that the evidence was sufficient to support a conviction under section 3731(a)(4), despite the lack of expert testimony relating the after-the-fact blood test back to the time of operation. *Boyd,* an *en banc* decision, essentially affirmed the holding from *Speights, supra,* that

> blood alcohol test results can—by themselves, without explanation by expert testimony—suffice to support a conviction under subsection 3731(a)(4) but that blood alcohol test results do not compel the trier of fact to find a defendant guilty of violating subsection 3731(a)(4) where there is competent evidence of record challenging said test results.

*Boyd,* 373 Pa.Super. at 298, 541 A.2d at 22 (quoting *Speights,* 353 Pa.Super. at 265–266, 509 A.2d at 1267). While I recognize that this court is bound by the holding in *Boyd,* I am of the opinion that *Speights'* rationale is flawed, and therefore *Boyd's* reliance on it should be reevaluated.

In *Speights,* the court stated that alcohol is absorbed into the bloodstream 30 to 90 minutes after it is imbibed. *Speights,* 353 Pa.Super. at 264, 509 A.2d 1266. The court then parlayed this finding into a generalization that if a person stops drinking 30 to 90 minutes before his arrest, his blood alcohol level will probably be falling at the time of

testing and therefore be lower than at the time he drove. *Id.* Thus, a pre-testing delay "generally inures to the benefit of the defendant-driver. . . ." *Id.* at 264, 509 A.2d at 1267. However, we as an appellate court cannot simply take judicial notice of the rate at which the body absorbs alcohol. *See Slingerland,* 358 Pa.Super. at 541, 518 A.2d at 271 (1986) (Cirillo, P.J., dissenting); *see also Commonwealth v. Brooks,* 362 Pa.Super. 236, 241, 523 A.2d 1169, 1172 (1987) ("judicial notice may be taken only of matters of common knowledge, of facts which are so well known that they are incontestable"); *Insurance Adjustment Bureau v. Insurance Commissioner for the Commonwealth of Pennsylvania,* 86 Pa.Commw. 491, 495, 485 A.2d 858, 860 (1984) ("[j]udicial notice is intended to avoid the formal introduction of evidence in limited circumstances where the fact sought to be proven is so well known that evidence in support thereof is unnecessary . . ."). Not only are absorption rates different for each person, but they depend on a myriad of factors, including, but not limited to, a driver's weight, what was eaten before drinking, the amount of alcohol each drink contained, and whether a non-alcohol based mixer was used. Moreover, *Speights'* pronouncements allow the fact finder to relate after-the-fact blood alcohol readings back to an earlier time as a matter of course, without any reservations. This was a departure from earlier declarations by this court. *See Commonwealth v. Griscavage,* 336 Pa.Super. 141, 152 n. 5, 485 A.2d 470, 476 n. 5 (1984) *rev'd on other grounds,* 512 Pa. 540, 517 A.2d 1256 (1986) ("[a]ttempts to relate back blood/alcohol levels to a time prior to the admission of the test are regarded with skepticism"); *Couts v. Ghion,* 281 Pa.Super. 135, 145, 421 A.2d 1184, 1189 (1980) ("[e]vidence 'relating back' a blood alcohol test to a time before the test was administered has been viewed with skepticism"); *Schwarzbach v. Dunn,* 252 Pa.Super. 454, 462, 381 A.2d 1295, 1299 (1977) (plurality opinion) ("[w]e regard with skepticism any evidence which attempts to relate back to a blood alcohol level at a time prior to the administering of such a test because such a test is entirely too speculative"). *Cf. Acker-*

*man v. Delcomico,* 366 Pa.Super. 569, 177, 486 A.2d 410, 414 (1984) ("[a]lthough the admission of the blood alcohol content has been condoned by this court ..., we remain skeptical as to the value of this evidence to the jury").

In addition to the Commonwealth's failure to present expert testimony, they drew only one blood sample from Allen. Lack of a second blood sample, taken after the first, essentially precluded the fact finder from deducing whether, at 4:20 a.m. Allen's body was still absorbing alcohol or whether it had started to eliminate it, and if in the elimination phase, when the blood alcohol level had peaked. In other words, the court did not know whether, at the time of testing, Allen was entering or leaving a drunken condition. It is "common knowledge that the [percent] of blood alcohol is not static but varies according to the time elapsing after initial ingestion." *Commonwealth v. Kostra,* 349 Pa.Super. 89, 99–100, 502 A.2d 1287, 1292 (1985). If a second blood sample was taken and tests performed on it registered a higher blood alcohol level than the first test, a person is still absorbing alcohol into the bloodstream and the blood alcohol content earlier, when driving, must have been lower. Because only one blood sample was taken, no determination of whether Allen was absorbing or eliminating alcohol could be made. Without a second blood test, the fact finder could not possibly make a determination, beyond a reasonable doubt, of the earlier level without simply guessing; extrapolation was impossible. A criminal conviction cannot be based on this type of uneducated guess. *See Saccol, supra; Paschall, supra; Sojourner, supra.*

Because the Commonwealth proved only that Allen's blood alcohol content exceeded .10 percent one hour after he operated his motor vehicle, I would find the evidence insufficient to sustain a conviction under 75 Pa.C.S. § 3731(a)(4). Accordingly, I would reverse Allen's conviction on that charge.