J-S68011-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KEITH ALLEN EBERT, | |
| Appellant | No. 2594 EDA 2013 |

Appeal from the Judgment of Sentence entered July 5, 2013,
in the Court of Common Pleas of Lehigh County,
Criminal Division, at No(s): CP-39-CR-0004816-2012

BEFORE:  ALLEN, JENKINS, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED OCTOBER 24, 2014**

Keith Allen Ebert ("Appellant") appeals from the judgment of sentence entered after a jury found him guilty of two counts of driving under the influence ("DUI"), and the trial court found him guilty of summary careless driving and disorderly conduct.[1]

The trial court summarized the pertinent facts as follows:

> [B]etween 3:30 PM and 4:00 PM on March 20, 2012, Jose Cruz was at 201 North 2nd Street, sitting on a third floor apartment balcony.  Cruz's 99 Chevy Silverado was parked outside in the 200 block of North 2nd Street.  Cruz observed a blue minivan run a stop sign and hit his truck.  Cruz yelled to the driver that he was coming downstairs.  When Cruz got downstairs, the driver and van were gone.  A neighbor called the police.  Approximately 5-10 minutes later, while Cruz was waiting for the police to come, he saw the same van come back

---

[1] 75 Pa.C.S.A. § 3802(a)(1), 3802(c), 3714(a), and 5503(a)(4).

to the area and park behind his truck on an angle. Cruz approached the passenger side of the van to speak with the driver, later identified as [Appellant], but the driver exited the van and walked away. [Appellant] left the van running, so Cruz turned the ignition off and kept the keys until the police arrived. Cruz watched [Appellant] walk east towards a church on Turner Street, and observed [Appellant] urinate next to the church.

Officer Michael Beidelman, of the Allentown Police Department was dispatched to the area of the 200 block of North 2nd Street for a motor vehicle accident. When he arrived [in] the area, Officer Beidelman saw a blue Mercury Villager minivan parked at an angle with its rear end sticking out into the roadway. The van had damage to the left headlight/turn signal area. Beidelman also saw a Chevy Silverado with minor damage to the rear, driver's side bumper. Beidelman spoke to Mr. Cruz and [Appellant], and observed approximately 10-15 other adults and children in the area. [Appellant] claimed the group stole his wallet, but after looking inside the van, Beidelman discovered the wallet under the passenger seat.

Officer Beidelman noticed [Appellant] was acting nervous, had glossy [sic] eyes, and was unsteady on his feet. Beidelman called for back-up. Officer Bull arrived and had [Appellant] perform standardized field sobriety tests, including a Nystagmus test, walk-and-turn, and one-leg stand. Biedleman observed the walk-and-turn and one-leg stand tests and determined [that Appellant] was under the influence and incapable of safe driving. While handcuffing [Appellant], Beidelman detected a moderate odor of alcohol. [Appellant] was taken to the booking center. Beidelman observed [Appellant's] blood [being] drawn and saw the tubes sealed in an evidence bag. The blood was subsequently sent to Health Network Laboratories for testing.

Nadine Koenig, a leading technologist in toxicology for Health Network Laboratories testified as an expert in the field of Forensic Toxicology. Ms. Koenig certified the results of [Appellant's] blood sample. Koenig noted the tubes in this case were not sealed, but the evidence bag they were contained in was sealed, and stated the sample would have been rejected by the lab if it arrived with no seals on the tube or on the bag. Additionally, Koenig described the steps taken with the sample from its arrival at the lab through the testing procedure. Testing

- 2 -

showed that [Appellant's] blood alcohol concentration was .16 percent.

On June 5, 2013, following a jury trial, [Appellant] was found guilty of two counts of driving under the influence. Additionally, [the trial court] found him guilty of summary careless driving and disorderly conduct. A presentence investigation was prepared, and on July 5, 2013, [the trial court] sentenced [Appellant] to an aggregate term of imprisonment of 1 year and 45 days to 5 years and 45 days in a State Correctional Institution.

Trial Court Opinion, 2/26/13, at 1-3 (footnotes omitted).

Appellant filed a motion for reconsideration on July 15, 2012, which the trial court denied on August 1, 2013. On August 30, 2013, Appellant filed notice of appeal and the trial court directed him to comply with Pa.R.A.P. 1925(b). Appellant however failed to comply and the trial court transmitted the record to this Court. On January 10, 2014, this Court remanded the case for Appellant to file a Pa.R.A.P. 1925(b) concise statement within twenty-one days. Appellant complied on January 27, 2014, and on February 26, 2014, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant presents one issue for our review:

DID THE TRIAL COURT ERR WHEN IT DENIED [APPELLANT'S] MOTION IN LIMINE WHICH REQUESTED THE SUPPRESSION OF THE BLOOD TESTS BASED UPON [APPELLANT'S] CONTENTION THAT THE TUBES CONTAINING [APPELLANT'S] BLOOD SAMPLE WERE NOT SEALED WHEN DELIVERED TO THE TESTING AGENCY AND THEREFORE WERE SUBJECT TO CONTAMINATION?

Appellant's Brief at 9.

Preliminarily, we note that chain-of-custody is an evidentiary principle that "refers to the manner in which evidence was maintained from the time it was collected to its submission at trial." *In re D.Y.*, 34 A.3d 177, 185 (Pa. Super. 2011) (citations omitted). Therefore, where chain of custody violations are alleged, suppression is not the appropriate remedy for such an evidentiary challenge. Rather, as with the admission of any other evidence, "[t]he admission of demonstrative evidence is a matter committed to the discretion of the trial court", and where there has been an improper chain of custody, the trial court may make an evidentiary ruling that such evidence is inadmissible. *Commonwealth v. Hudson*, 414 A.2d 1381, 1387 (Pa. 1980). *See Commonwealth v. McKellick*, 24 A.3d 982, 986 (Pa. Super. 2011) ("Admission of evidence is within the sound discretion of the trial court, and this Court will find the trial court abused its discretion only where it is revealed in the record that the court did not apply the law in reaching its judgment or exercised manifestly unreasonable judgment or judgment that is the result of partiality, prejudice, bias, or ill will. In addition, it is the exclusive province of the finder of fact to determine the weight of relevant evidence.").

The standard for establishing a chain of custody for admission of physical evidence has been stated by our Courts as follows:

> The admission of demonstrative evidence is a matter committed to the discretion of the court ... Furthermore, there is no requirement that the Commonwealth establish the sanctity of its exhibits beyond a moral certainty ...

- 4 -

> Every hypothetical possibility of tampering need not be eliminated; it is sufficient that the evidence, direct or circumstantial, establishes a reasonable inference that the identity and condition of the exhibit remained unimpaired until it was surrendered to the trial court ... Finally, physical evidence may be properly admitted despite gaps in testimony regarding its custody....

*Commonwealth v. Bartley*, 576 A.2d 1082, 1085 (Pa. Super. 1990) *quoting* *Commonwealth v. Bruner*, 564 A.2d 1277, 1285 (Pa. Super. 1989) and *Commonwealth v. Hudson*, 414 A.2d 1381 (Pa. 1980).

Here, Appellant argues that the vials containing his blood were unsealed when they arrived for testing at Health Network Laboratories. Appellant's Brief at 11-12. Appellant contends that Ms. Koenig, the Commonwealth's forensic toxicology expert, acknowledged that normal protocol for the transportation and delivery of blood required the individual vials to be sealed, marked with evidence tape, and then placed in a sealed evidence bag. *Id*. Because the vials were not sealed and marked with evidence tape when delivered to the laboratory, Appellant contends that the vials may have been contaminated or tampered with (even though the evidence bag that they arrived in was sealed) and that the blood samples were therefore unreliable and should have been excluded. *Id.*

"When determining whether blood alcohol test results were properly admitted, we are primarily concerned with [1] the qualifications of the person performing the blood test and the equipment used; [2] whether the laboratory was licensed and approved by the Department of Health, and [3]

the chain of custody." ***Commonwealth v. Sullivan***, 581 A.2d 956, 959 (Pa. Super. 1990).

Appellant does not contest the qualifications of the persons performing the blood test, the equipment used, or whether the facility was approved by the Department of Health. Nor does Appellant dispute the testimony of Officer Beidelman, who observed Appellant's blood being drawn and placed in a sealed package[2], together with the testimony of Ms. Koenig, the Commonwealth's forensic toxicology expert, who attested to an unbroken chain of custody, testifying that after Officer Beidelman personally observed Appellant's blood being drawn at the Lehigh Valley Booking Center, the blood samples were transmitted to the Health Network Laboratory by a courier who picked up the blood samples and transported them to the laboratory. N.T., 6/4/13, at 62; N.T., 6/5/13, at 17-18.

With regard to Appellant's assertion that the blood vials were not individually sealed, "[a]llegations of problems in the chain of custody go to the weight of the evidence, and it is [the fact-finder's] duty to balance these allegations against the reasonable inference of an unaltered chain of custody." ***Commonwealth v. Alarie***, 547 A.2d 1252, 1255 (Pa. Super. 1988). Moreover, "[t]here is no need for the Commonwealth to prove

_____

[2] ***See Commonwealth v. Mahaney***, 540 A.2d 556, 560 (Pa. Super. 1988) ("when the police observe the technician drawing the blood, the Commonwealth is not compelled to call the technician").

beyond a doubt the sanctity of a blood sample after it is withdrawn from a driver. The Commonwealth must simply establish a reasonable inference that the sample was unimpaired until it was brought to court." *Commonwealth v. Allen*, 575 A.2d 131, 134 (Pa. Super. 1990) (citations omitted). Here, there is no evidence in the record to support Appellant's claim that the blood samples were tampered with or contaminated. The trial court correctly stated that "any gaps in the chain of custody go towards the weight of the evidence, not its admissibility." Trial Court Opinion, 2/26/13, at 4. Clearly the jury in this case found credible the testimony of Officer Beidelman and Ms. Koenig that the vials were in a sealed evidence bag which had not been disturbed, and concluded that the failure to seal the individual vials did not undermine the reliability of the results of the blood alcohol test. We will not disturb such determinations on appeal.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/24/2014

- 7 -