Commonwealth *v.* Miller, Appellant.

Commonwealth *v.* Kauffman, Appellant.

148

Submitted March 10, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*William F. Kaminski,* Assistant Public Defender, and *Blake E. Martin,* Public Defender, for appellants.

*Edwin D. Strite, Jr.,* First Assistant District Attorney, and *John R. Walker,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., April 22, 1975:

Eddie Miller and Rickey Kauffman were found guilty by the court below, sitting without a jury, of criminal conspiracy[1] and criminal mischief.[2] Appellants raise numerous issues dealing primarily with the validity and interpretation of the criminal mischief statute and errors alleged to have been made at trial. Since we have decided these issues in favor of the Commonwealth, we will affirm the judgments of sentence.

The facts giving rise to this appeal are as follows. In the morning of October 29, 1973, it was discovered that the Snowy Mountain fire tower had been toppled. The tower, a steel structure composed of open beams of angle iron, supporting stairs and an observation cabin, was completely destroyed. It had fallen onto a pole of a power line that ran close to it, breaking off a transformer and putting a portion of the community of South Mountain out of electrical service. Two of the main legs and all the lower supporting beams of the structure had been cut. An examination of the cut steel indicated that a hacksaw had been used to fell the tower. Testimony was admitted showing the costs of replacing the tower, and repairing the electrical line totaled almost $35,000.

Christine High, the former girlfriend of appellant Eddie Miller, and Richard Wagaman, a juvenile, testified for the Commonwealth. The juvenile testified that late on

---

1. Act of December 6, 1972, P.L. 1482, §1, 18 Pa. C.S. §903 (1973).

2. Act of December 6, 1972, P.L. 1482, §1, 18 Pa. C.S. §3304 (1973).

October 28, he and both appellants and a third adult boy had decided to saw down the Snowy Mountain fire tower. Hacksaws were obtained, the four proceeded to the tower, and while Richard held the flashlight, the others sawed the base of the tower. Although Richard was taken home before the tower fell, the next day the appellants and the third boy reported the details of the fall to him. Christine testified that the same story was told to her by the appellants and she was also able to show the police where the hacksaw blades could be recovered, since she was a passenger in the car when the blades were tossed from the vehicle. Close examination of the cut steel revealed fragments of red paint exactly matching that scraped from the sides of the hacksaw blades.

Charges were brought against the three adult boys and they were tried together. Rickey Kauffman and the third defendant called family members as witnesses to testify to their alibi defenses. Eddie Miller attempted to impeach the credibility of the prosecution witnesses Christine High and Richard Wagaman. The trial judge found all the defendants guilty of both criminal conspiracy and criminal mischief. In the case of the two appellants, sentences were imposed on both charges.

Appellants have attacked the criminal mischief statute under which they were convicted as being unconstitutional. They base their argument in this regard on the theories espoused in the unreported case of *Commonwealth v. Watson*, No. 384 October Term, 1973, Court of Common Pleas of the First Judicial District of Pennsylvania, (Decided January 30, 1974) which dealt with the constitutionality of Section 3903 of the Crimes Code, titled "Grading of theft offenses."[3] Appellants seem to be

---

3. Act of December 6, 1972, P.L. 1482, §1, 18 Pa. C.S. §3903 (1973). Both this section and §3304(b), Criminal mischief, provide for grading the degree of the offense according to the value of the lost property. However, the objectionable subsections of §3903 [subsection (b) and (c)], which originally required proof of value to

arguing that where the degree of criminality in an offense is established by proof of the amount of monetary loss suffered, an unconstitutional burden is placed on the defendant to come forward with evidence going to the value of the damage sustained.[4]

The subsection of the criminal mischief statute deal ing with grading of offenses provides as follow: "[c]riminal mischief is a felony of the third degree if the actor intentionally causes pecuniary loss in excess of $5,000, or a substantial interruption or impairment of public communication, transportation, supply of water, gas or power, or other public service. It is a misdemeanor of the second degree if the actor intentionally causes pecuniary loss in excess of $1,000, or a misdemeanor of the third degree if he intentionally or recklessly causes pecuniary loss in excess of $500. Otherwise criminal mischief is a summary offense." Act of December 6, 1972, P.L. 1482, No. 334, §1, 18 Pa.C.S. §3304 (1973). Although there are no presumptions as to pecuniary value of the loss caused by the actor and therefore no burden on him to produce any evidence of value, it is apparent that the valuation portion of this section does not even apply to the appellants herein. It is clear that where a substantial interruption or impairment of public services is proven, regardless of the monetary amount of damage done, the criminal mischief is a felony of the third degree. In the present case it was shown that the appellants sawed down a fire tower, a

be brought forward by the accused, were amended on June 17, 1974, by Act No. 118 S.B. No. 1506, to provide for changes in the burden of proof and manner by which property involved in the theft can be valued. *See Commonwealth v. Kuykendall*, 231 Pa. Superior Ct. 457, 331 A.2d 686 (1974). There is no similar requirement for a defendant to produce evidence of valuation under §3304(b).

4. Appellants also argue that the valuation subsection of §3304 is unconstitutionally vague and overbroad. For reasons stated in this opinion, we have decided that the valuation subsection does not apply to appellants and we will therefore not need to discuss this issue.

structure serving the public by facilitating the detection of forest fires, which fell on top of a power line pole thereby interrupting electrical service to a nearby community. This evidence is sufficient to qualify the appellants' acts as felonious in the third degree without proof of pecuniary damages. *See Commonwealth v. Reese,* 230 Pa. Superior Ct. 471, 327 A.2d 189 (1974).[5]

Appellants also argue that it is error to convict them of both the crime of criminal conspiracy under section 903 of the Crimes Code and the crime the appellants conspired to commit. It is appellants' position that the Crimes Code should be construed as mandating a merger of the offense of conspiracy into the crime charged when the accused is found guilty of actually having committed that crime. This has not been the law in Pennsylvania under the Penal Code. In *Commonwealth ex rel. Perry v. Day,* 181 Pa. Superior Ct. 73, 121 A.2d 904, *allocatur refused,* 181 Pa. Superior Ct. *xxiv* (1956), a case decided under the Penal Code, this Court repeated the rule that the crime of conspiracy does not merge with the completed offense but remains a separate and distinct crime. When the new Crimes Code was drafted, the legislators had the opportunity to change this rule. The Model Penal Code, upon which a substantial portion of the Crimes Code is based, contained a section barring conviction of more than one offense when one offense consists only of conspiracy to commit another crime with which the defendant is charged.[6] The Crimes Code, however, while adopting a section on conspiracy substantially identical to that of the

---

5. Appellants have raised a number of additional arguments and objections touching the question of valuation. Because we have held that the valuation portion of grading the offense does not apply to these appellants, these arguments have not been considered.

6. Model Penal Code §1.07 (Proposed Official Draft, 1962). For commentary on this section, see Model Penal Code §1.08, Comment (Tent. Draft No. 5, 1956).

Model Penal Code,[7] failed to include the proposed section barring conviction for conspiracy in conjunction with the accomplished crime. Therefore, it is apparent that there was no attempt to change the law of Pennsylvania in the new Code and the rule remains that the crime of conspiracy does not merge with the consummated offense.

Appellants' remaining arguments question the sufficiency of the evidence to sustain the verdict as well as a number of alleged trial errors. They contend that the Commonwealth failed to prove beyond a reasonable doubt how the tower was cut down, and that insufficient weight was given to the testimony of the defense witnesses as well as to some alleged conflicts in the testimony of the prosecution's witnesses. As has been stated many times, the scope of review of an appellate court determining the sufficiency of the evidence is limited to deciding whether, accepting as true all evidence, direct or circumstantial, and all reasonable inferences arising therefrom upon which the trier of fact could have properly based the verdict, the evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. *See, e.g., Commonwealth v. Petrakovich*, 459 Pa. 511, 329 A.2d 844 (1974); *Commonwealth v. Bundy*, 458 Pa. 240, 328 A.2d 517 (1974); *Commonwealth v. Fortune*, 456 Pa. 365, 318 A.2d 327 (1974). The Commonwealth's failure to present evidence disproving all other conceivable methods of cutting down the tower does not render the evidence insufficient. The evidence it did present was consistent and certainly sufficient to support its theory of the events in question. The alleged conflicts in testimony pointed out by appellants relate to insignificant matters and do not detract from the sufficiency of the evidence. *Common-*

---

7. Criminal conspiracy, Act of December 6, 1972, P.L. 1482, §1, 18 Pa.C.S. §903 (1973), is based on the Model Penal Code §5.03 (Proposed Official Draft, 1962). The commentary to this section may be found in the Model Penal Code §5.03, Comment (Tent. Draft No. 10, 1960).

wealth v. Rankin, 441 Pa. 401, 272 A.2d 886 (1971). As to the weight given to the testimony of the various witnesses, it is a long standing rule that a finder of fact is entitled to believe all, or a part of, or none of a witness's testimony. Commonwealth v. Rankin, supra; Commonwealth v. Dawkins, 227 Pa. Superior Ct. 558, 322 A.2d 715 (1974).

Appellants also claim error in the trial judge's interrogation of a witness to bring out the use which was made of the fire tower by the forest service and the consequences of being deprived of it. They contend that such conduct constituted impermissible advocacy for the benefit of the prosecution which had not yet proved that aspect of its case. We have carefully reviewed the court's questioning of the witness and can find no impropriety. The trial judge has a right, and sometimes a duty, to examine a witness for the purpose of clarifying or making more certain important points. Commonwealth v. McGlory, 226 Pa. Superior Ct. 493, 313 A.2d 326 (1973). Although it is a better practice for the trial judge to avoid extended examination of witnesses, and to permit counsel to bring out the evidence in a case, the judge may develop a point neglected by counsel where it is required in the interest of obtaining a fair result. Commonwealth v. Myma, 278 Pa. 505, 123 A. 486 (1924), overruled on other grounds, Commonwealth ex rel. Cummins v. Price, 421 Pa. 396, 218 A.2d 758 (1966). In the present case, although the judge's interrogation was somewhat longer than would be desired, it was aimed at clarifying an indefinite point which neither side had precisely developed. There was no jury to be prejudiced against the appellants, and the judge's questions showed no bias on his own part. In questioning alternative fire detection services, and uncovering the fact that other methods than the tower could be used, the Commonwealth's case may have received some assistance, but we cannot say such questions, where no jury was present, represented improper involvement of the judge as an advocate in the case.

Appellants' final allegation of error concerns the chain of custody of the hacksaw blades admitted into evidence at trial. The testimony reveals that two officers, following the direction of the witness Christine High, found the blades where the appellants had disposed of them. The evidence was placed in unmarked envelopes and locked in a police locker. One of the officers then removed the envelopes and took them to the crime lab. This officer was unable to positively say that the unmarked, sealed envelopes were the same as those placed in the locker, although he testified they appeared the same. Upon arriving at the crime lab, the evidence and wrappings were examined, initialed, and dated. Appellants argue that because the envelopes were unmarked in the locker, and because the evidence remained for approximately a month in the crime lab, there is no proof that it had not been tampered with or altered. This contention is without merit. There is no requirement that the Commonwealth establish the sanctity of its exhibits beyond all moral certainty. It is sufficient that the evidence, direct and circumstantial, establish a reasonable inference that the identity and condition of the exhibits remained unimpaired until they were surrendered to the court. *See Alexander v. United States,* 241 F.2d 351 (8th Cir. 1957); *United States v. Clark,* 294 F. Supp. 1108 (W.D. Pa. 1968), *cert. denied,* 400 U.S. 820 (1970). In our opinion, this evidence is sufficient to establish a reasonably unbroken chain of evidence, and we are satisfied that the hacksaw blades examined by the crime lab and delivered to the court are the same as those found by the officers.

Judgments of sentence affirmed.