## Commonwealth v. Seiders

*James M. Schall, district attorney,* for the commonwealth.

*David C. Wertime,* for defendant.

KAYE, *J.,* November 14, 1989 — This matter is before the court for a determination of defendant's violation of the terms and conditions of the sentence of probation entered in the above case. A hearing on the alleged violation was held on September 26, 1989, at the conclusion of which counsel were directed to file memorandums of law, which were ordered because of the belief of defense counsel that significant legal questions exist in this matter. We find that a violation of defendant's probation occurred, and will direct that the defendant appear for sentencing following the preparation of a presentence investigation report.

On June 22, 1982, defendant appeared before this court for sentencing on counts 1 and 2 of the information filed in this case, both of which involved violation of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §780-101 et seq. On count 2, defendant was sentenced, inter alia, to a prison term of two to five years, effective June 22, 1982. On count 1, defendant was sentenced to five years of probation, consecutive to count 2.

The Pennsylvania Board of Probation and Parole commenced supervision of defendant on the sentences imposed in the above. Prior to his being granted parole from the state correctional institution on count 2, defendant was interviewed by an institutional representative of the PBPP, and was advised that he would be subject to periodic urinalysis. While this condition apparently was expressly made applicable to count 2 only, we note that this

condition involved supervision that would include both the parole period, and the period in which defendant would serve the consecutive sentence of probation.

On June 13, 1984, the PBPP accepted defendant for supervision on count 1, and defendant was advised that, among other conditions, the following condition applied:

"(5) He shall: ·

"(a) abstain from the unlawful possession, or sale of, narcotics and dangerous drugs, and abstain from the use of controlled substances within the meaning of the Controlled Substance, Drug, Device, and Cosmetic Act (35 P.S. §§780-101 through 780-144) without a valid prescription."

During the period of his supervision, with the exception of a brief hiatus, defendant was under the supervision of Orlando Zaccagni of the PBPP. During every meeting while he supervised defendant, Officer Zaccagni reminded defendant of the provisions contained in condition number 5. On a random basis, Officer Zaccagni would conduct urinalysis testing on defendant to assure this condition was being complied with. On one occasion, defendant tested positive for THC, indicating defendant had used marijuana, which contains the THC chemical compound. However, no action was taken to have defendant found in violation of probation on that occasion.

On April 13, 1989 and on May 31, 1989, urine samples were taken from defendant by Officer Zaccagni, and were forwarded to HealthEast Laboratories for analysis. In both instances, the results were positive for cocaine metabolites, indicating that defendant had used cocaine.

Following receipt of the second positive test result, Officer Zaccagni made arrangements to see

defendant on June 12, 1989 in McConnellsburg. At that time, Officer Zaccagni learned that defendant was attending a baseball game, and thought it prudent not to approach him at that location. Therefore, he arranged to meet defendant at his residence at approximately 7:30 p.m. that evening. Officer Zaccagni arranged for two state troopers to accompany him, but they travelled separately, and initially remained outside the residence. We note that although Officer Zaccagni testified that he had not decided whether to charge defendant with the probation violation[*] until speaking with him, the State Police "assignment report" expressly states:

"Agent Zaccagni stopped by the station and requested the assistance of PSP [Pennsylvania State Police] in arresting Kenneth Lee Seiders for violation of his probation in that within the past month and one-half he received positive indications on urine specimens taken from Seiders."

Following his arrival at the Seiders residence, which was occupied by defendant and Lawrence Eugene Ghidina, Officer Zaccagni decided to place defendant under arrest. He did so, with the assistance of Corporal John D. Zechman and Trooper Robert Albright, both State Police members.

Following the arrest of defendant, Officer Zaccagni determined to conduct a search of the premises to determine if cocaine was present. He enlisted the aid of the two state police officers, who proceeded without a search warrant through a long hallway to defendant's bedroom door, which was locked. A key was somehow located, and entry was made by the officers. Due to the lighting conditions,

---

[*] We find this difficult to comprehend, in view of defendant's past record of involvement in illegal drug dealing, and three separate occasions of positive test results demonstrating the presence of controlled substance in defendant.

which made for poor visibility, Trooper Albright located a flashlight, and resumed the search. The search proceeded to a bathroom which adjoined defendant's bedroom. In a closet of the bathroom Corporal Zechman found a box containing a white powder, later found to be cocaine.

After this material was found, Corporal Zechman left the premises to secure the assistance of the Region 3 Drug Strike Force, and to obtain a search warrant. Because of the hour, a "nighttime" search warrant was obtained from District Justice Carol J. Johnson, and Troopers Boppe and Ruda from the strike force accompanied Corporal Zechman to execute the search warrant. The warrant was executed, and inter alia, additional controlled substances, a set of scales, a spoon, and a notebook containing information related to drug dealing were located. (As an omnibus pretrial motion for suppress evidence was filed and the hearing thereon was held contemporaneously herewith, the facts of the search and items recovered will be set forth in greater detail in the separate opinion relating to the search and seizure issue).

Defendant was charged with possession of a controlled substance, possession with intent to deliver a controlled substance, and conspiracy to possess a controlled substance with intent to deliver. Following the preliminary hearing, the district justice found that a prima facie case had been established, and the charges were returned to court.

On the matter presently before the court, i.e. the probation violation, defendant was notified that the bases therefor were that he failed to live as a law-abiding citizen by reason of the above arrests, and that he failed to abstain from the use of a controlled substance, by reason of the results of urinalysis testing.

.As to the initial matter, defendant has attempted to challenge the legality of the search leading to the arrests, and thus to obviate any basis for the arrests. However, we do not find it necessary to consider that issue herein, as we think the urinalysis testing results provide ample basis for finding that a probation violation occurred.

In regard to the urinalysis testing, defendant challenged the test results on the ground that such testing was not made a special condition of his probationary sentence and, he asserts, he was therefore not subject to such testing, so, his reasoning follows, the test results are not admissible.

We note that defendant was put on notice of the intention of the office to conduct such testing when defendant was orally advised thereof at the commencement of the period of supervision, as well as by the two previous occasions on which defendant tested positive for controlled substances prior to the third positive test which led to the instant probation violation proceeding. Defendant is being disingenuous if he is claiming, as we understand him to, that he was not given notice that he was subject to urinalysis testing.

We have found no precedent in Pennsylvania which specifically deals with the failure of the probation authority to advise the probationer with written notice regarding urinalysis. However, at least one federal appeals court, in *United States v. Duff,* 831 F.2d 176 (7th Cir., 1987), upheld a challenge to such testing under similar circumstances.

The testing to which defendant has taken exception differs from typical conditions of probation in that it does not compel specific activity by defendant in the usual conduct of his life, but rather provides the supervising officer with a scientific means of

determining if the probationer has complied with a specific condition of probation, i.e. refraining from the use of controlled substances, unless prescribed by a physician. In the modern world, such a relatively limited intrusion involving a person previously convicted of drug offenses is both necessary and reasonable to affirm or rebut compliance with this condition of probation.

Although defendant expresses concern at the invasion of his privacy in the place (a McDonald's restaurant restroom) and manner (the urine sample being collected in the immediate presence of the probation officer) of collection of the urine sample, we note that the officer had difficulty locating defendant at his residence, and thus arranged to meet defendant at the restaurant, and that if the officer had not observed the collection of the sample, the officer could not be assured that the sample provided was defendant's urine.

Defendant, by his past criminal conduct, had shown a propensity to involve himself with illicit drugs, and periodic testing of his urine is the least intrusive means of determining if defendant is proceeding with efforts at his rehabilitation.

Moreover, it is not defendant's failure to comply with urinalysis testing, but the result of the testing that is involved herein. Defendant cannot claim that it was a lack of notice of an unknown violation which brought him to his current difficulties, but rather his failure to comply with a condition very specifically contained on the terms and conditions of his probation, and previously set forth herein. We find unpersuasive defendant's contentions regarding the failure to set forth urinalysis testing as a condition of probation, and therefore reject them.

Finally, defendant has objected to the admissibility of the urinalysis test results on the ground the

chain of evidence was not adequately established. Prior to reviewing the law, we will set forth briefly the facts and background.

On two occasions, Officer Zaccagni took urine samples from defendant. The urine sample was taken in a tube in the presence of Officer Zaccagni, who sealed it, identified it, placed the sealed tube into a mailer with which he had been supplied by the PBPP, and he deposited the pre-addressed mailer in the U.S. mails along with a form which also accompanied the mailer and which Officer Zaccagni completed. The mailer was sent to HealthEast Laboratories in Allentown, Pennsylvania, a laboratory approved by the Pennsylvania Department of Health under the Clinical Laboratory Act, 35 P.S. §§2151-2165 to conduct urine testing for the presence of controlled substances, see 19 Pa. Bulletin at 1352 et seq. (March 25, 1989).

At the time of testing, HealthEast Laboratories held a contract with the Commonwealth of Pennsylvania to conduct urinalysis testing for the Pennsylvania Board of Probation and Parole. The procedure followed was established pursuant to a protocol submitted by HealthEast Laboratories and accepted by the Department of Health.

Pursuant to the protocol, the mailed package was inspected upon receipt at HealthEast Laboratories by a technician under the supervision of Gerald E. Clemen, Ph.D., director of toxicology of HealthEast Laboratories, to determine if it remained intact. Upon ascertaining that it had, the technician opened the package, and examined the contents. The information on the form and tube were compared, and the sample was provided with a control number which was entered into the laboratory's computer. Following this, the sample underwent testing: thin layer chromatography, followed by the CIBA amino

acid survey, both of which tests were positive for cocaine on both dates on which testing was done.

On the first test the laboratory's toxicology supervisor certified the test results, and on the second test, Dr. Clemen certified the test. In both instances, the test results were forwarded to the Pennsylvania Board of Probation and Parole.

Defendant alleges that the test results are unreliable and inadmissible because the commonwealth failed to establish the chain of evidence. We do not agree. As noted in *Commonwealth v. Miller*, 234 Pa. Super. 146, 339 A.2d 573 (1975):

"[T]here is no requirement that the commonwealth establish the sanctity of its exhibits beyond all moral certainty. It is sufficient that the evidence, direct and circumstantial, establish a reasonable inference that the identity and condition of the exhibits remained unimpaired until they were surrendered to the court."

See also, *Stahl v. Commonwealth of Pennsylvania, Board of Probation and Parole*, 106 Pa. Commw. 274, 525 A.2d 1272 (1987).

We conclude that the commonwealth has met the standard set forth in the above-cited cases, and that the test results properly were admitted into evidence.

## ORDER OF COURT

November 14, 1989, defendant is found to be in violation of the terms and conditions of his sentence of probation by reason of his failure to refrain from the use of a controlled substance, i.e. cocaine. The Pennsylvania Board of Probation and Parole is directed to prepare a pre-sentence investigation report, and sentencing will be at the call of the District Attorney upon receipt of the same.