J-S49006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA

v.

RICHARD H. PHILLIPS

Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 3190 EDA 2015

Appeal from the Judgment of Sentence April 21, 2015
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR0000624-2014

BEFORE: PANELLA, J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, J.                **FILED SEPTEMBER 30, 2016**

Appellant, Richard H. Phillips, appeals from the judgment of sentence entered in the Monroe County Court of Common Pleas, following his bench trial convictions for driving under influence of alcohol or controlled substance ("DUI"), general impairment, and the summary traffic offenses of maximum speed limits and driving on roadways laned for traffic.[1] We affirm.

The relevant facts of this case as taken from the certified record are as follows. On December 28, 2013, at approximately 2:42 a.m., Pennsylvania State Trooper Michael Thomas observed a black GMC Envoy proceeding west on Interstate 80. Trooper Thomas followed the vehicle, observed it swerve

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(a)(2), 3362, 3309, respectively.

over the centerline and fog line three times, and clocked the vehicle traveling 72 miles per hour in a posted 55 miles per hour zone. Trooper Thomas then initiated a traffic stop and made contact with Appellant, asking for his vehicle paperwork. During the course of the stop, Trooper Thomas smelled the odor of alcohol emanating from Appellant's vehicle and observed Appellant fumbling his vehicle paperwork. Trooper Thomas also observed Appellant had bloodshot, glassy eyes and mumbled, slurred speech. At Trooper Thomas's request, Appellant exited his vehicle and performed field sobriety tests, including the one-leg stand test, the walk-and-turn test, and the portable breath test. Trooper Thomas indicated that Appellant had not performed well on the one-leg stand test and the walk-and-turn test, so Trooper Thomas administered the portable breath test, which indicated Appellant's blood alcohol content ("BAC") exceeded the legal limit.

Thereafter, Trooper Thomas took Appellant to the Monroe County DUI Center where Appellant consented to a blood draw. A phlebotomist drew Appellant's blood into a tube, properly labeled it, and placed it in a refrigerator in view of the Center's camera. The blood tube then was transported to Wyoming Regional Laboratory, where a forensic scientist analyzed the blood sample and issued a report indicating Appellant's BAC was 0.091%. The forensic scientist testified that the standard tube used in blood draws is a gray-top tube, which contains sodium fluoride and anticoagulants, and when the forensic scientist analyzed Appellant's blood

sample, he checked the integrity of the blood sample and confirmed it contained Appellant's blood.

Procedurally, the Commonwealth filed a criminal complaint on February 27, 2014. On March 25, 2014, Appellant waived his right to a preliminary hearing. The Commonwealth charged Appellant on April 23, 2014, with two counts of DUI, general impairment, (incapable of safe driving and BAC between 0.08% and 0.10%) and three summary traffic offenses (maximum speed limits, driving on roadways laned for traffic, and careless driving).

Appellant filed an omnibus pretrial motion requesting the following: (a) to order the laboratory to provide blood testing procedure documents; and (b) to suppress evidence related to the vehicle stop based on Appellant's assertion that the police did not have probable cause to stop him or reasonable suspicion to conduct field tests or blood draws. After briefing and a suppression hearing, the court denied Appellant's requests.

The court held a bench trial and found Appellant guilty of one count of DUI, general impairment (BAC between 0.08% and 0.10%), and the summary traffic offenses of maximum speed limits and driving on roadways laned for traffic. The court sentenced Appellant on April 22, 2015, to electronic monitoring/house arrest for a period of 30 days for DUI, to pay fines and costs, to complete a drug and alcohol treatment program successfully, and to undergo a license suspension for a period of 12 months.

The court also sentenced Appellant to pay fines and costs for the summary traffic offenses. Appellant filed a timely post-sentence motion, challenging the weight and sufficiency of the evidence and seeking reconsideration of the court's suppression ruling. The court denied Appellant relief. Appellant timely filed a notice of appeal.

Appellant raises two issues for our review:

WAS [APPELLANT'S] BLOOD DRAWN AS A RESULT OF CONSENT THAT WAS GIVEN WHILE HE WAS UNLAWFULLY DETAINED?

HAS THE COMMONWEALTH PRODUCED SUFFICIENT EVIDENCE THAT [APPELLANT] WAS DRIVING AFTER IMBIBING [ALCOHOL] WITH A BLOOD ALCOHOL PERCENTAGE GREATER THAN .08[%] WHEN THE PHLEBOTOMIST [DID] NOT IDENTIFY THE MAN ON THE VIDEO FROM WHICH SHE DREW BLOOD AS [APPELLANT] AND NO EVIDENCE OF PROPER HANDLING OF THE BLOOD [WAS] ADMITTED?

Appellant's Brief, at 5.

For purposes of disposition, we address Appellant's issues together. Appellant argues Trooper Thomas did not possess reasonable suspicion that Appellant was under the influence of alcohol to continue his detention, after Trooper Thomas initiated the traffic stop. Appellant reasons the odor of alcohol emanating from his vehicle, bloodshot eyes, and mumbled and slurred speech do not constitute signs of impairment to suggest he was driving under the influence. Appellant further explains Trooper Thomas was unable to recall the specific details of Appellant's field sobriety test failures and is inherently biased because he presumes all vehicle stops are DUI-

related unless convinced otherwise. So, Appellant insists Trooper Thomas's continued detention of Appellant after the initial traffic stop was unlawful and Appellant's later consent to withdraw blood should have been suppressed.

Our standard of review of the denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on [the] appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial court are] subject to … plenary review.

***Commonwealth v. Hoppert***, 39 A.3d 358, 361-62 (Pa. Super. 2012).

The suppression court's factual findings are supported by the record. Accordingly, we focus our attention on the propriety of the suppression court's legal conclusions—most importantly, that the stop was lawful.

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. ***See Commonwealth v. Carter***, 105

A.3d 765, 768 (Pa.Super. 2014) (*en banc*), *appeal denied*, 117 A.3d 295 (Pa. 2015). "While warrantless seizures such as a vehicle stop are generally prohibited, they are permissible if they fall within one of a few well-delineated exceptions." ***Commonwealth v. Brown***, 996 A.2d 473, 476 (Pa. 2010) (citation omitted). For purposes of this case, a pertinent exception is a traffic stop authorized by 75 Pa.C.S.A. § 6308(b).

Under § 6308(b),

when considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop.

***Commonwealth v. Salter***, 121 A.3d 987, 993 (Pa. Super. 2015).

The Motor Vehicle Code defines the offense of maximum speed limits as follows:

**§ 3362.  Maximum speed limits**

**(a)    General rule.**—Except when a special hazard exists that requires lower speed for compliance with section 3361 (relating to driving vehicle at safe speed), the limits specified in this section or established under this subchapter shall be maximum lawful speeds and no person shall drive a vehicle at a speed in excess of the following maximum limits:

\* \* \*

(2) 55 miles per hour in other locations.

The Motor Vehicle Code also defines the offense of driving on roadways laned for traffic as follows:

**§ 3309.  Driving on roadways laned for traffic**

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

**(1)  Driving within single lane.—**A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

\* \* \*

The Crimes Code defines the offense of DUI as follows:

**§ 3802. Driving under the influence of alcohol.**

**(a) General impairment.—**

\* \* \*

(2) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

Instantly, the trial court analyzed Appellant's first issue concerning the evidence of the vehicle stop and ensuing DUI arrest as follows:

In denying [Appellant's] motion in this case, we specifically found that the State Police had probable cause to stop [Appellant]. Our finding was based on and fully supported by the testimony of Trooper [Thomas], whom was found credible, that he had clocked [Appellant] going 72 miles per hour (MPH) in a posted 55 MPH zone and that he observed [Appellant] sway

back-and-forth in his lane of travel and cross the fog line three times. Clocking a driver exceeding the posted speed limit by 17 MPH and seeing the driver swerve across the fog line three times on an Interstate Highway clearly constitutes probable cause that the driver committed the violations of [maximum speed limits] and [driving on roadways laned for traffic].

We also indicated that the above facts, coupled with other surrounding circumstances, probably constituted sufficient reasonable suspicion to stop [Appellant] for suspicion of DUI. Again, the testimony of Trooper [Thomas] supported our determination.

Finally, we found that the above facts, coupled with Trooper [Thomas's] sensory observations after stopping [Appellant] were constitutionally sufficient to justify a continuing investigatory detention, including the administration of field sobriety tests, and, as the investigation evolved, to support probable cause for an arrest and chemical testing of [Appellant's] blood. This finding, in turn, was supported by the above facts plus Trooper [Thomas's] credible testimony that he smelled alcohol [emanating from Appellant's vehicle], that [Appellant's] speech was slurred and mumbled, that [Appellant] had difficulty gathering his license and registration, and subsequently that [Appellant] failed a field test and a preliminary breath test for which he had trouble producing a breath sample.

Trial Court Opinion, filed December 21, 2015, at 5-6 (internal citations to the record omitted). The record supports the trial court's sound reasoning.

Trooper Thomas had probable cause to initiate a valid traffic stop as he observed Appellant violate the Vehicle Code by speeding and crossing the centerline several times. **See** 75 Pa.C.S.A. §§ 3362, 3309. Once legally stopped, he observed that Appellant's eyes were glassy and bloodshot, Appellant's speech was mumbled and slurred, and Appellant's vehicle emanated the odor of alcohol. These conditions provided reasonable

suspicion for Trooper Thomas to investigate further. Trooper Thomas then removed Appellant from the vehicle and performed sobriety tests, which Appellant failed.

Based on his observations and the failed sobriety tests, Trooper Thomas possessed probable cause to arrest Appellant for DUI. **See** 75 Pa.C.S.A. § 3802(a)(2); **Commonwealth v. Hilliar**, 943 A.2d 984 (Pa.Super. 2008) (holding probable cause existed to arrest driver for DUI where driver smelled of alcohol and his speech was slurred). Thus, Appellant's arrest for DUI did not violate his constitutional rights. The trial court properly denied Appellant's motion to suppress the evidence of DUI on this ground. **See Hoppert**.

In his final issue, Appellant avers the Commonwealth failed to present sufficient evidence to prove that Appellant's BAC was at least 0.08%, but less than 0.10%, because Appellant was not connected to the blood draw. Specifically, Appellant complains the Commonwealth failed to ask the phlebotomist to identify Appellant in the video shown to her, which depicted the night of Appellant's blood draw. Alternatively, Appellant contends the phlebotomist did not indicate that she mixed the blood sample by shaking it after drawing Appellant's blood into the gray-top tube, so Appellant asserts the accuracy of the blood sample is flawed and the BAC results should be

discarded. Appellant concludes this Court should vacate the judgment of sentence and remand for further proceedings.[2] We disagree.

A challenge to the sufficiency of evidence implicates the following principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing *all the evidence admitted* at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

_____

[2] Preliminarily, we observe any issues not raised in a Rule 1925(b) statement will be deemed waived on appeal. **See Commonwealth v. Jackson**, 10 A.3d 341, 347 n.4 (Pa. Super. 2010); Pa.R.A.P.1925(b)(4)(vii). **See also Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005) ("[I]n order to preserve their claims for appellate review, appellants must comply whenever the trial court orders them to file a[s]tatement of [m]atters [c]omplained of on [a]ppeal pursuant to [Rule] 1925.") Instantly, to the extent Appellant argues the Commonwealth failed to present sufficient evidence connecting Appellant to the blood draw, this argument is waived for Appellant's failure to include it in his Rule 1925(b) statement.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011) (citations omitted) (emphasis added).

"There is no need for the Commonwealth to prove beyond a doubt the sanctity of a blood sample after it is withdrawn from a driver. The Commonwealth must simply establish a reasonable inference that the sample was unimpaired until it was brought to court." *Commonwealth v. Allen*, 575 A.2d 131, 134 (Pa. Super. 1990) (citing *Commonwealth v. Miller*, 339 A.2d 573 (Pa. Super. 1975)).

With respect to Appellant's complaint about the blood sample, the court reasoned as follows:

> The [Appellant] was … transported to Monroe County DUI Center to have his blood drawn by the phlebotomist, Tracy Brown. The blood sample was then sent to the Wyoming [Regional Laboratory] where[, the forensic scientist,] John Schlenker[,] analyzed the blood sample. At the trial, John Schlenker testified as an expert and that he performed the analysis on the [Appellant's] blood and that the result was 0.091% to a reasonable degree of scientific certainty. John Schlenker testified that he checked the integrity of the blood sample, that the test tube had the appropriate gray stopper top before he performed the test and that the tube contained the anticoagulants.
>
> \*   \*   \*
>
> In the instant case, we find that, in viewing the evidence in the light most favorable to the Commonwealth, as the verdict winner, the evidence presented at the bench trial establishes each element of the crime charged and the commission thereof by the accused beyond a reasonable doubt.

Trial Court Opinion, filed September 24, 2015, at 3-4 (internal citations to the record omitted). We agree.

We also note the Commonwealth did not need to prove the sanctity of the blood sample by showing the phlebotomist mixed it; the Commonwealth established a reasonable inference that the sample was unimpaired until it was brought to court. ***See Allen***. Based on the foregoing, we conclude Appellant's issues are without merit. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/30/2016