J-S75041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH F. PORTERFIELD, | : | |
| | : | |
| Appellant | : | No. 898 WDA 2017 |

Appeal from the Judgment of Sentence May 30, 2017
in the Court of Common Pleas of Mercer County,
Criminal Division at No(s):  CP-43-CR-0001760-2016

BEFORE:  SHOGAN, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED JANUARY 30, 2018**

Joseph F. Porterfield ("Porterfield") appeals from the judgment of sentence imposed following his conviction of two counts of driving under the influence of alcohol ("DUI").[1]  We affirm.

At approximately 1:00 a.m. on July 2, 2016, Porterfield entered a DUI checkpoint on the Shenango Valley Freeway in Sharon, Pennsylvania, and his vehicle was stopped.[2]  Pennsylvania State Police Trooper Sherry Hogue ("Trooper Hogue") approached Porterfield's vehicle.  Trooper Hogue immediately detected an odor of alcoholic beverages coming from inside of the vehicle, and asked Porterfield to exit the vehicle.  Trooper Hogue smelled alcohol on Porterfield's breath and noticed that his eyes were glassy and

---

[1] **See** 75 Pa.C.S.A. § 3802(a)(1) and (b).

[2] Porterfield's ten-year-old daughter was a passenger in the vehicle.

bloodshot. Porterfield admitted to Trooper Hogue that he had consumed a six-pack of beer, but alleged that he was not drunk because he was "immune" to alcohol. Trooper Hogue asked Porterfield to perform field sobriety tests. However, Porterfield replied that he could not perform the tests because of a herniated disk in his back. Trooper Hogue then administered a portable breath test, which was positive for alcohol.

Trooper Hogue placed Porterfield under arrest for suspicion of DUI, and transported him to Sharon Regional Hospital for a chemical test of his blood alcohol content ("BAC").[3] At the hospital, Trooper Hogue read Porterfield the warnings contained on the Pennsylvania Department of

_____

[3] Trooper Hogue did not have a warrant to compel Porterfield to submit to the blood test.

Transportation DL-26 form ("DL-26 form"),[4] in accordance with the mandate of 75 Pa.C.S.A. § 1547 (concerning blood or breath testing to determine amount of alcohol/controlled substance, and the consequences for refusal to submit to a test). After Trooper Hogue read Porterfield the DL-26 form warnings, both she and Porterfield signed the form. Porterfield then submitted to a blood test. A subsequent chemical analysis of Porterfield's blood sample revealed that he had a BAC of .13 percent (hereinafter referred to as "the blood test result").

_____

[4] Notably to the instant appeal, the DL-26 form that Trooper Hogue read to Porterfield was the new version, which had been revised in response to the decision of the United States Supreme Court in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016). The *Birchfield* Court held that, because the taking of a blood sample is a search within the meaning of the Fourth Amendment to the United States Constitution, police officers may not compel the taking of a blood sample without a search warrant, absent an applicable exception. *See id.* at 2185. After concluding that "the search incident to arrest doctrine does not justify the warrantless taking of a blood sample," *id.*, the *Birchfield* Court considered whether implied-consent laws, which require cooperation with blood-alcohol testing as "a condition of the privilege of driving on state roads," could provide an exception to the warrant requirement consistent with the federal constitution. *Id.* at 2169, 2185-86. The *Birchfield* Court held that, although implied-consent laws that impose civil penalties and evidentiary consequences for refusing to consent are constitutional, implied-consent laws that impose *criminal* penalties for refusing to consent to a blood test are unconstitutional because "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id*. at 2185-86. Importantly, in the instant case, the post-*Birchfield* DL-26 form that Trooper Hogue read to Porterfield *did not contain any reference to enhanced criminal penalties* for refusal to submit to a blood test (though the form did state that such refusal would result in the motorist's operating privileges being suspended for at least a year). *See* N.T. (Suppression Hearing), 4/6/17, at 6 (wherein Trooper Hogue read into the record the contents of the DL-26 form at issue).

The Commonwealth charged Porterfield with two counts of DUI, and one count each of careless driving[5] and recklessly endangering another person ("REAP").[6] Prior to trial, Porterfield filed an Omnibus Pretrial Motion (hereinafter "Motion to Suppress"), seeking, *inter alia*, to suppress the blood test result. Porterfield argued that the blood test result was unlawfully obtained without a warrant, and his consent to the blood draw was unknowing, involuntary, and coerced.

After conducting an evidentiary hearing, the trial court entered an Order denying the Motion to Suppress. Concomitantly with this Order, the trial court issued Findings of Fact. Therein, the court found that **Birchfield** was inapplicable to the instant case, and the warrantless blood draw was thus not illegal, since the new, post-**Birchfield** DL-26 form that Trooper Hogue read to Porterfield contained no mention of enhanced criminal penalties for refusal to submit to a blood test.

The matter then proceeded to a non-jury trial on May 12, 2017. When the Commonwealth sought to admit the blood test result, Porterfield's counsel objected, asserting that the chain of custody concerning this evidence was deficient. The trial court overruled the objection and admitted the blood test result. Prior to the close of trial, the trial court granted Porterfield's Motion for judgment of acquittal on the charges of careless

---

[5] **See** 75 Pa.C.S.A. § 3714(a).

[6] **See** 18 Pa.C.S.A. § 2705.

- 4 -

driving and REAP. The court then found Porterfield guilty of two counts of DUI.

On May 30, 2017, the trial court sentenced Porterfield to serve not less than 48 hours nor more than 6 months in the Mercer County Jail, plus a $1,000 fine and court costs. Porterfield timely filed a Notice of Appeal.

On June 19, 2017, the trial court issued an Order directing Porterfield to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal within 21 days.[7] Porterfield did not file his Concise Statement until July 18, 2017, nine days late. The trial court thereafter issued a Rule 1925(a) Opinion, addressing the merits of the issues raised by Porterfield despite the lateness of his Concise Statement.[8]

Porterfield now presents the following issues for our review:

1. [Whether] the suppression court erred in allowing a warrantless withdrawal of Porterfield's blood[?]

_____

[7] The trial court's docket indicates that Porterfield was given notice of the entry of the June 19, 2017 Order.

[8] Though we could find that Porterfield waived his issues on appeal based on the untimeliness of his Concise Statement, **see Commonwealth v. Castillo**, 888 A.2d 775, 776 (Pa. 2005), we decline to do so because the trial court addressed the merits of Porterfield's issues in its Opinion. **See Commonwealth v. Thompson**, 39 A.3d 335, 340 (Pa. Super. 2012) (declining to find waiver because the trial court had addressed the issues raised in the untimely concise statement); **see also Commonwealth v. Burton**, 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*) (stating that "[w]hen counsel has filed an untimely Rule 1925(b) statement and the trial court has addressed those issues[,] we need not remand and may address the merits of the issues presented.").

    2. [Whether] the trial court erred in admitting the results of testing on Porterfield's blood without a proper chain of custody[?]

Brief for Appellant at 5 (capitalization omitted).

In his first issue, Porterfield argues that the trial court erred in denying his Motion to Suppress, where the blood test result was unlawfully obtained under ***Birchfield***, ***supra***, and his consent to the blood draw was invalid. ***See*** Brief for Appellant at 10-17.

> [O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

***Commonwealth v. Yandamuri***, 159 A.3d 503, 516 (Pa. 2017) (citations omitted).

> The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. ***Commonwealth v. McAdoo***, 2012 PA Super 118, 46 A.3d 781, 784 (Pa. Super. 2012). Blood tests constitute searches under the Fourth Amendment[,] as they implicate privacy concerns. ***Birchfield***, 136 S.Ct. at 2173[; *s*]*ee also **Commonwealth v. Ellis***, 415 Pa. Super. 220, 608 A.2d 1090, 1091 (Pa. Super. 1992) (providing that "the administration of a blood test is a search within the meaning of the Fourth Amendment if it is performed by an agent of the government").

> "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." ***Commonwealth v. Strickler***, 563 Pa. 47, 56, 757 A.2d 884, 888 (2000) (citations omitted). Those exceptions include voluntary consent. ***Id.*** "The central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent." ***Id.***

***Commonwealth v. Smith***, 2017 PA Super 416, at *9 (Pa. Super. 2017).

In ***Smith***, which is directly on point, this Court recently discussed ***Birchfield***, and the admissibility of warrantless blood test results obtained after the motorist's signing of a post-***Birchfield*** DL-26 form, and consenting to the blood test. In ***Smith***, as here, the appellant was arrested by Trooper Hogue in Mercer County for suspicion of DUI, and taken to a hospital for a blood test. ***Id.*** at *3. Trooper Hogue read the appellant the warnings on the post-***Birchfield*** DL-26 form, which did not contain any information regarding enhanced criminal penalties for refusal to submit to a blood test. ***Id.*** The appellant signed the DL-26 form and the blood test was performed, which later revealed that the appellant's BAC was well above the legal limit. ***Id.***

On appeal, the appellant in ***Smith*** raised a virtually identical claim to Porterfield's above-mentioned claim, challenging the suppression court's denial of her motion to suppress the warrantless blood testing results, and relying upon ***Birchfield***. ***Id.*** at *8. This Court addressed the appellant's claim and summarized the applicable law as follows:

- 7 -

In **Birchfield**, the High Court reviewed a consolidated case in which one of the petitioners, Steve Michael Beylund, was arrested for DUI and informed that the refusal to submit to blood testing constituted a crime itself under North Dakota law. Thereafter, petitioner Beylund argued that his consent had been coerced by the officer's warning. Relevant to the instant case, the United States Supreme Court held that a state may not "insist upon an intrusive blood test, but also … impose criminal penalties upon the refusal to submit to such a test." **Birchfield**, 136 S.Ct. at 2185. Moreover, the High Court emphasized that "motorists cannot be deemed to have consented to a blood test upon pain of committing a criminal offense." **Id.** at 2186. As petitioner Beylund had consented to a blood test only after police had erroneously informed him that he could be criminally penalized if he refused to do so, the **Birchfield** Court remanded for the trial court to "reevaluate Beyland's consent given the partial inaccuracy of the officer's advisory." **Id.**

Nevertheless, the **Birchfield** Court emphasized that its holding did not apply to the imposition of civil penalties and evidentiary consequences upon motorists suspected of DUI who refused blood testing upon their arrest:

> It is well established that a search is reasonable when the subject consents, and that sometimes consent to a search need not be express but may be fairly inferred from context. Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose *civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.*

**Birchfield**, 136 S.Ct. at 2185 (emphasis added) (citations omitted).[FN]

[FN] We observe that the Pennsylvania Commonwealth Court held that **Birchfield** does not affect the imposition of *civil* license suspension for refusal to submit to a blood test. **Boseman v. Commonwealth, Dep't of Transportation, Bureau of Driver Licensing**, 157 A.3d 10, 21 (Pa. Cmwlth. 2017)[; **see also Commonwealth v. Bell**, 167 A.3d 744, 750 (Pa. Super. 2017) (same).]

- 8 -

Thereafter, this Court decided ***Commonwealth v. Evans***, 2016 PA Super 293, 153 A.3d 323 (Pa. Super. 2016), in which the appellant had similarly argued that his consent to blood testing after his arrest for DUI was coerced as he only consented after the police warned him that his refusal to submit to blood testing would result in harsher penalties upon conviction. Although the ***Evans*** [C]ourt recognized that Pennsylvania's implied consent law did not make refusal to submit to a blood test a crime, the panel emphasized that the law "undoubtedly impose[s] criminal penalties on the refusal to submit to a test." ***Evans***, 153 A.3d at 331 (quoting ***Birchfield***, 136 S. Ct. at 2185-86). This Court pointed [] to the DUI penalty provisions set forth in 75 Pa.C.S.A. § 3804:

> Section 3804(c) provides that an "individual who violates section 3802(a)(1)[, DUI, general impairment] and refused testing of blood" is punished more severely than an individual who commits the stand-alone DUI, general impairment offense under Section 3802(a)(1)— and to the same extent as an individual who violates Section 3802(c), relating to DUI, highest rate of alcohol. 75 Pa.C.S.A. § 3804(c). As such ***Birchfield*** controls the case at bar.

***Id.***

Since the appellant in ***Evans*** had argued that he agreed to submit to blood testing only after being informed that harsher penalties would apply if he refused, this Court held that the officer's advisory to Evans was "partially inaccurate[,]" as ***Birchfield*** prohibits states from imposing criminal penalties for the refusal to submit to blood testing. ***Evans***, 153 A.3d at 331. As a result, this Court vacated the appellant's sentence and the suppression order and remanded with instructions for the trial court to reevaluate the voluntariness of appellant's consent in light of this inaccurate warning and the totality of the circumstances.

The instant case is factually distinguishable from ***Birchfield*** and ***Evans***. To reiterate, the decision in ***Birchfield***, which was controlling law at the time of [a]ppellant's arrest, prohibited states from imposing criminal penalties upon an individual's refusal to submit to a warrantless blood test. ***Birchfield***, 136 S. Ct. at 2185. The trial court in this case[, as

in Porterfield's case,] found **Birchfield** was inapplicable since [a]ppellant was never advised that she would be subject to enhanced criminal sanctions upon refusal of blood testing. Our review of the record confirms this finding; both parties agree that Trooper Hogue only informed [a]ppellant that her driver's license would be suspended if she refused blood testing. Appellant signed a DL-26 form acknowledging that she was advised of this particular consequence. This form does not contain any reference to enhanced criminal penalties. **See** Commonwealth's Exhibit 1, DL-26 form. Thereafter, [a]ppellant agreed to submit to blood testing, which revealed a blood alcohol level of 0.274 [percent]. We cannot conclude that the trial court erred in denying [a]ppellant's suppression motion ….

**Smith**, 2017 PA Super 416, at \*\*10-13 (footnote in original). The sound rationale of **Smith** is controlling in the instant case, and compels an identical result. **See id.**

We additionally note that Porterfield appears to argue that his consent cannot be deemed knowing and voluntary where, at the time of his arrest, the Pennsylvania DUI penalty provision allowing for enhanced penalties upon refusal of blood testing had not yet been amended by the General Assembly to conform with **Birchfield** and its progeny. **See** Brief for Appellant at 16-17 (asserting, *inter alia*, that "Pennsylvania's driving under the influence law has been around long enough that this[, *i.e.*, presumably, the pre-**Birchfield** enhanced criminal penalty for refusal to submit to a blood test, as previously contained in former 75 Pa.C.S.A. §§ 1547(b)(2)(ii) and

- 10 -

3804(c)[9],] is common knowledge to the motoring public[,] not to mention that we are all presumed to know the law."). However, our review of the record discloses that at no time did Porterfield raise this claim before the trial court. Accordingly, it is waived. *See* Pa.R.A.P. 302(a) (stating that a claim cannot be raised for the first time on appeal); *see also Commonwealth v. Phillips*, 141 A.3d 512, 522 (Pa. Super. 2016) (stating that a new theory of relief cannot be raised for the first time on appeal). Thus, Porterfield's first issue challenging the suppression court's refusal to suppress the blood test result fails.

In his second issue, Porterfield contends that the trial court erred by overruling his objection to the admission of the blood test result, where the chain of custody concerning this evidence was lacking. *See* Brief for Appellant at 18-21. Porterfield advances scant substantive argument to develop this claim, asserting as follows: "In Porterfield's trial, the Commonwealth failed to introduce any proper evidence to establish the chain of custody between the time the arresting trooper placed the blood into evidence and the time the chemist tested the same." *Id.* at 21.

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of

---

[9] On July 20, 2017, the General Assembly amended sections 1547(b)(2)(ii) and 3804(c), so as to eliminate enhanced criminal penalties for refusing a warrantless test of one's blood (and the warning associated therewith), bringing these statutes into compliance with *Birchfield*. *See* Section 4 of the Act of July 20, 2017, P.L. 333.

discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Commonwealth v. Johnson***, 42 A.3d 1017, 1027 (Pa. 2012) (citations and quotation marks omitted).

We review a challenge concerning a chain of custody under the following standard:

> While the Commonwealth bears the burden of demonstrating some reasonable connection between the profe[]red exhibits and the true evidence, ***Commonwealth v. Pedano***, 266 Pa.Super. 461, 467, 405 A.2d 525, 528 (1979), it need not establish the sanctity of its exhibits beyond a moral certainty. ***E.g., Commonwealth v. Miller***, 234 Pa.Super. 146, 155, 339 A.2d 573, 578 (1975), *aff'd*, 469 Pa. 24, 364 A.2d 886 (1976). The Commonwealth need not produce every individual who came into contact with an item of evidence, nor must it eliminate every hypothetical possibility of tampering. ***Commonwealth v. Rick***, 244 Pa.Super. 33, 38, 366 A.2d 302, 304 (1976). A complete chain of custody is not required so long as the Commonwealth's evidence, direct and circumstantial, establishes a reasonable inference that the identity and condition of the exhibits have remained the same from the time they were first received until the time of trial. ***Commonwealth v. Oates***, 269 Pa.Super. 157, 163, 409 A.2d 112, 115 (1979); ***Commonwealth v. Miller***, *supra*. Any gaps in testimony regarding the chain of custody go to the weight to be given the testimony, not to its admissibility. ***Commonwealth v. Bolden***, 486 Pa. 383, 388-89, 406 A.2d 333, 335-36 (1979).

***Commonwealth v. Cugaini***, 452 A.2d 1064, 1065 (Pa. Super. 1982).

In its Opinion, the trial court addressed and rejected Porterfield's challenge to the admissibility of the blood test result, stating as follows:

> Turning to the [] issue of whether the Commonwealth established the chain of custody of the drawn blood such that

- 12 -

the lab results were admissible, the [trial c]ourt finds that the Commonwealth has met its burden. The facts reveal that there was sufficient chain of custody evidence produced establishing that the blood drawn at the hospital was the blood tested at the crime lab.

Theresa Susak [("Susak")] testified at the trial of this case. She was [the] phlebotomist [at] Sharon Regional Hospital who performed the blood draw. [] Susak testified as to how she uses a kit and[,] after she withdrew the blood[,] she would hand it over to the police officer and would sign and initial all paperwork. (Trial transcript pp. 10-15).

Trooper [] Hogue … testified[,] in pertinent part[,] that after taking [Porterfield] to the Sharon Regional Hospital[,] she was present when … Susak took [Porterfield's] blood. (T.T. p. 8). After the blood was drawn, Trooper Hogue testified that she retained control of the blood until it was entered into evidence[,] and then the evidence was ultimately sent to the Erie Crime Lab. (T.T. p. 8). Trooper Hogue further testified that the evidence taken from the hospital goes into the evidence locker and would either have been hand[-]delivered or picked up by UPS. (T.T. p. 9).

Neal Rerko [("Rerko")] testified that he is a forensic chemist employed by the Pennsylvania State Police at the Erie Regional Crime Laboratory. (T.T. p. 20). [] Rerko testified that the kit containing the blood draw was submitted to the laboratory on July 7, 2016, having arrived at 15:27 hours by Trooper Stuck[]y. Thus, the kit was hand[-]delivered to the laboratory[,] and then the laboratory chain of custody picked up from there. (T.T. p. 26). Once the crime lab received the evidence[,] it was entered into the laboratory information system and assigned a barcode and a laboratory number that is used to track the evidence as it moves through the laboratory. [] Rerko testified that the evidence was received by the evidence technician, [and] placed into refrigerator vault one on July 7, 2016. The evidence technician then retrieved the evidence and gave it to [] Rerko[,] who destroyed the packaging and broke out the tubes of blood themselves and conducted his analysis. (T.T. p. 27).

[Porterfield's] allegation goes to the weight to be afforded the evidence. It is sufficient that the evidence, direct and circumstantial, establish a reasonable inference that the identity

and condition of the exhibit remain unimpaired until they are surrendered to the court. (***Com***[***monwealth***] ***v. Feliciano***, 67 A.3d 19 (Pa. Super. 2013)). There is no rule requiring the prosecution produce as witnesses all persons who are in a position to come into contact with the article sought to be introduced into evidence. Physical evidence may be properly admitted despite gaps in testimony regarding custody[.] (***Com***[***monwealth***] ***v. Jenkins***, 332 A.2d 490, 492 (Pa. Super. 1974)); ***Feliciano***, ***supra*** at 29. [Porterfield's] argument must fail on this issue[.]

Trial Court Opinion, 7/25/17, at 3-5. We agree with the trial court's determination and sound analysis, which is supported by the record, and therefore affirm on this basis in rejecting Porterfield's second issue. ***See id.***

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/30/2018